**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellant,**

v.

**BOSWORTH CONSTRUCTION CO. et al., Defendants-Appellees.**

No. 72–2150

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1972.

---

7. N. L. R. B. v. Seven-up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953).

8. Phelps Dodge Corp. v. N. L. R. B., supra, 313 U.S. at 194, 61 S.Ct. at 852.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

C. Murphy Moss, Jr., William S. Penick, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for plaintiff-appellant.

Peter A. Feringa, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for United States Fidelity & Guaranty Co.

William J. Wegmann, New Orleans, La., for Krebs and LeMieux.

John V. Baus, New Orleans, La., for Hughes Constr. Co.

Ben C. Toledano, New Orleans, La., L. Drew Redden, William H. Mills, Birmingham, Ala., for Schuler.

Felicien P. Lozes, New Orleans, La., for Bosworth Constr. Co.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

WISDOM, Circuit Judge.

The appellant, Insurance Company of North America, appeals from the decision of the district court granting summary judgment. We affirm.

On December 2, 1966, a portion of the Governor House Motel in New Orleans collapsed. In accordance with an insur-

ance policy then in effect, Insurance Company of North America paid the owners of the collapsed structure the sum due under the terms of the policy and exercised its rights of subrogation by commencing the present damage action against the defendants for $1,810,624.95. The defendants, all of whom participated in the design, fabrication, or erection of the structural steel portions of the building which are alleged to have failed and caused the collapse, include the following parties:[1]

(1) Bosworth Construction Company, Inc., the general contractor; (2) Guy LeMieux and J. J. Krebs & Sons, Inc., the structural engineers; (3) Schuler Equipment Company, Inc., the fabricator of the structural steel; (4) R. H. Hughes Construction Company, Inc., the structural steel erector; and (5) United States Fidelity and Guaranty Company, the general liability insurer of Schuler Equipment Company, Inc.

U. S. F. & G. filed a motion for summary judgment on the ground that its policy did not cover Schuler for the type of loss alleged in the complaint. After a hearing, the district court granted the motion and entered a judgment dismissing U. S. F. & G. from the action.

On appeal, INA contends that the district court erred, first, in concluding that coverage was not apparent on the face of the contract, and alternatively, in concluding that the policy was not sufficiently ambiguous to present factual issues warranting trial on the merits.

■■■■ A summary judgment, of course, should not be granted if there is a genuine issue as to any material fact. The burden is on the moving party to show that there is not the slightest doubt as to the facts and that only the legal conclusion remains to be resolved. Lighting Fixture & Elec. Sup. Co. v. Continental Ins. Co., 5 Cir. 1969, 420 F. 2d 1211, 1213; United States v. Bur-

ket, 5 Cir. 1968, 402 F.2d 426; National Screen Service Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647. Even though the facts are undisputed, summary judgment is inappropriate if competing reasonable inferences may be drawn as to any material factual issue. Cole v. Chevron Chem. Co., 5 Cir. 1970, 427 F.2d 390; N. L. R. B. v. Smith Industries, Inc., 5 Cir. 1968, 403 F.2d 889.

Applying these principles to the present case, we find that the district court was correct in granting summary judgment. In its complaint, INA alleges that the collapse of the building was partially attributable to the negligence of an independent contractor employed by Schuler and that the insurance policy issued by U. S. F. & G. covers this type of loss. The policy specifies three categories of risk for which Schuler is covered: (1) "aggregate operations"; (2) "aggregate protective"; and (3) "aggregate contractual". Coverage for a fourth type of risk, "aggregate products", is expressly excluded from the policy. The dispute between the parties centers on whether the coverage under "aggregate protective" for acts of independent contractors is affected by the exclusion of coverage for "aggregate products". The policy defines "aggregate protective" coverage as follows:

> Subject to the limit of liability with respect to "each accident," the limit of property damage liability stated in the declarations as "aggregate protective" is the total limit of the Company's liability for all damages arising out of injury to or destruction of property, including the loss of use thereof, *caused by operations performed for the Named insured by independent contractors or general supervision thereof by the named* insured. . . . (Emphasis added.)

INA contends that since the acts of independent contractors are alleged to

---

1. William Schuler and Schuler Building Company, Inc. were named as defendants in the original complaint but were subsequently dismissed from the suit by consent of all parties.

have contributed to the collapse of the building, coverage for the resulting loss is apparent from the face of the policy.

Although INA's argument exhibits a surface plausibility, a more careful reading of the policy compels a different interpretation. "Aggregate products", which is excluded from coverage under the policy, is defined as liability for bodily injury or property damage arising out of "the products hazard". "Products hazard", in turn, is defined to include:

(1) goods or products manufactured, sold, handled, or distributed by the Named Insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the Named Insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the Named Insured. . . .;

(2) operations, *including any act or omission in connection with operations performed by or on behalf of the Named Insured* on the premises or elsewhere and whether or not goods or products are involved in such operations, *if the accident occurs after such operations have been completed* or abandoned and occurs away from premises owned, rented or controlled by the Named Insured. . . . (Emphasis added.)

Read together, these provisions clearly exclude coverage for any loss resulting from operations or acts performed "by or on behalf of" the insured, Schuler, if the accident occurs after completion of the operations. In the present case, it is undisputed that the accident occurred after the structure was completed. In these circumstances, it must be concluded that the policy does not cover losses resulting from the alleged negligent acts of the independent contractor hired by Schuler.

This interpretation is reinforced by the deposition of the agent who wrote the policy and the answers of the named insured to interrogatories. They acknowledged that Schuler did not request or purchase any coverage for liability resulting from completed products or operations. Moreover, attached to the policy was a special endorsement which provided:

### EXCLUSION OF PRODUCTS HAZARD

It is agreed that the policy does not apply to the products hazard as defined therein.

In view of these clear indications that coverage was to terminate absolutely upon completion of the structure, it is difficult to accept INA's position that the term "aggregate protective" should be given the expansive interpretation which it has suggested. The intent of the parties is the most reliable guide to interpretation of any written agreement. We think that here intent is manifest from the face of the policy.

In response, INA argues that the "products hazard" exclusion applies only to acts or operations performed by Schuler and that the phrase "for or on behalf of" refers to Schuler's employees and not to independent contractors hired by Schuler. As authority, INA cites Lowitt v. Pearsall Chem. Corp. of Md., 1966, 242 Md. 245, 219 A.2d 67, in which an employee of an independent contractor sued for injuries sustained while working on the owner-insured's premises. The court found that a provision of the insurance policy which excluded coverage of injuries to persons "engaged in the service of and/or acting on behalf of the insured" referred only to employees of the insured and not to independent contractors. This case does not help INA, however, since the court specifically held that the phrase "on behalf of" was not intended to broaden the reach of the phrase "in the service of another" and was, in effect, mere surplusage. Moreover, the court stated that important public policy considerations demanded that the exclusion be in-

terpreted narrowly. Absent the particular circumstances of that case, we believe that the phrase "on behalf of" should be given its ordinary meaning.[2]

Moreover, INA's interpretation would result in a situation in which there would be coverage under the policy for the completed operations of independent contractors, but not for the completed operations of Schuler or his employees. INA attempts to justify this distinction by suggesting that broader coverage was necessary for the acts of independent contractors because Schuler could not supervise their work as closely as he could the work of his own employees. This argument proves too much, however, since it necessarily follows that the policy should provide broader coverage for the operations of independent contractors in all respects, which the policy clearly does not. In addition, it is instructive to note that the two clauses in the contract which do provide broader coverage for operations of independent contractors do so by express language. It is reasonable to assume that the parties would have employed the same degree of specificity, rather than innuendo, if they had intended to create broader coverage for the completed operations of independent contractors.

We conclude, therefore, that there is no genuine issue of fact and that the district court's decision granting summary judgment must be affirmed.

---

2. As the district court stated:

"[T]he policy clearly excludes products hazard and products hazard as defined would eliminate coverage from any operations performed by or on behalf of the named insured and I am not prepared to say that such a strained meaning should be given to the words 'on behalf of', as to make them refer only to employees or others under the direct supervision of the named insured, as opposed to the independent contractor. To the contrary, I feel that a more common sense reading of the words 'on behalf of', would be to apply them to independent contractors.

Now, with regard to the argument concerning coverage, the language of coverage D, the aggregate protective and other aspects of such coverage, the Court feels that all of these refer to operations, meaning contemporaneous operations; that accidents occurring after operations have been completed have been excluded quite clearly by virtue of the exclusion of the products hazard coverage.

In summary, gentlemen, the Court feels that the exclusion of the products hazard coverage is adequate to exclude that type coverage, regardless whether it related to an act by the named insured or by an independent contractor working under the named insured."