**T.C. BATESON CONSTRUCTION COMPANY, Appellant,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, Appellee.**

No. C14–88–387–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 22, 1989.

Rehearing Denied Dec. 21, 1989.

—Dallas 1987, p.d.r. ref'd.).

Bob Roberts, Houston, for appellant.

Don Weitinger, Mike Johanson, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

Appellant T.C. Bateson Construction Company (Bateson) appeals the grant of a summary judgment in favor of appellee Lumbermens Mutual Casualty Company (Lumbermens) and the denial of its own motion for summary judgment. At issue is coverage under a comprehensive general liability policy purchased by Bateson from Lumbermens. We affirm the summary judgment.

The parties stipulated to certain facts, which we summarize as follows. In September 1967 Bateson entered into a contract with the University of Texas to construct the Lyndon Baines Johnson Library in Austin, Texas. The contract provided that the library was to be constructed in accordance with certain documents made part of the contract. The library's exterior was to be sheathed in a specific type of marble. The construction documents described how the marble was to be anchored to the building and included a formula for mortar to be used in the anchoring system.

Construction of the library began in September 1967, and the building was completed and turned over to the University in November 1971. Prior to that time, however, cracks appeared in the marble and continued to appear after occupancy by the University. Many of the cracks were in the immediate vicinity of the anchoring devices by which the marble sheets were attached to the building. The University requested that Bateson make repairs to the library, but Bateson did not do so. The University then contracted with another contractor to make the repairs and filed suit against Bateson.

During 1969, 1970 and 1971, Bateson had in effect a comprehensive general liability policy issued by Lumbermens. The policy provided insurance coverage, subject to the

terms and conditions of the policy, against property damage liability up to $300,000 aggregate, plus "supplementary payments." After suit was filed, Bateson made a demand upon Lumbermens to defend the suit. Lumbermens denied a defense on the basis of no coverage.

No property of the University or others was damaged or destroyed except the cracked marble sheathing, the steel anchoring components and some related water damage. The damage to the sheathing was caused, in part, by grouting (mortar) that did not conform to contract specifications. It was determined by expert investigation that Bateson or its subcontractors added gypsum to the mortar, contrary to the formula contained in the construction documents. The presence of the gypsum caused excessive expansion, resulting in the cracking of the marble sheathing. Bateson or its subcontractors provided all of the materials, including the marble, anchoring components and mortar used to affix the marble sheathing to the structure. Don Ream was the masonry subcontractor, and he and his employees were independent contractors rather than employees of Bateson.

During 1969, 1970 and 1971, Bateson also had in effect a performance bond, which guaranteed the University that the work contracted for by Bateson would be performed pursuant to the contract. After Lumbermens refused to defend the suit, Bateson elected to defend at its own expense. Bateson ultimately settled the case for $1,550,000 plus costs and then sued Lumbermens.

Lumbermens filed a motion for summary judgment, asserting that Bateson sought "to recover the expenses incurred in the repair and replacement of their own work product, which due to their own deficiencies in product, workmanship, and materials was defectively constructed." Lumbermens argued that well-settled law disallows recovery for such repair and replacement costs when the insurance policy specifically excludes recovery. Lumbermens then relied on certain exclusions in the policy at issue to show that it specifically excluded

such recovery. Bateson also moved for summary judgment, contending there was coverage under the policy because the exclusions relied upon by Lumbermens were ambiguous as a matter of law and should be strictly construed against the insurer. In a lengthy opinion, the trial court concluded that there was no genuine issue as to any material fact and that Lumbermens was entitled to judgment as a matter of law.

The policy at issue reads in part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, ...

The pertinent exclusions are as follows:

**This insurance does not apply:**

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

. . . . .

(l) to property damage to the named insured's products arising out of such products or any part of such products; (m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

Before reviewing Bateson's points of error, we first address Lumbermens' contention that certain policy exclusions, specifically (m), preclude Bateson's recovery under the policy. The purpose of comprehensive liability insurance coverage is to provide protection to the insured for personal injury or for property damage caused by

the completed product but not for the replacement and repair of that product. *La-Marche v. Shelby Mut. Ins. Co.*, 390 So.2d 325, 326 (Fla.1980). The justification for treating these risks differently is that the insured can control the quality of the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability. *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 791 (1979). Furthermore, "[t]o interpret the policy as providing coverage for construction deficiencies, as asserted by the petitioners and a minority of states, would enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work." *La-Marche v. Shelby Mut. Ins. Co.*, 390 So.2d at 326.

Exclusions like those set out above reflect this concept and are commonly referred to as "business risk" exclusions. *Vari Builders, Inc. v. United States Fidelity and Guar. Co.*, 523 A.2d 549, 551 (Del. Super.Ct.1986). They have been widely recognized as a valid limitation on coverage in general liability insurance policies.

> In the context of this case the exclusions are designed to protect insurers from contractors' attempts to recover funds to correct deficiencies caused by the contractors' questionable performance. Their use demonstrates the insurers' belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which general liability policies are written.

*Id.*

Lumbermens asserts that the facts of this case clearly fall within at least one of the "business risk" exclusions, exclusion (m), which is set out above. Lumbermens argues that as general contractor, Bateson contracted to build an entire library, not merely a component part; therefore, Bateson's "work" refers to the construction of the whole building. The property damage was limited to the grouting, marble sheathing and steel hangers, with some related

water damage—all damage to the building itself. Furthermore, the damage arose out of the installation of the marble sheathing (work performed by Don Ream on behalf of Bateson) with grouting and steel hangers (materials furnished by Ream).

Texas courts have denied recovery under exclusions identical or very similar to (m) in similar fact situations. *See, e.g., Eulich v. Home Indem. Co.*, 503 S.W.2d 846 (Tex. Civ.App.—Dallas 1973, writ ref'd n.r.e.); *McCord, Condron and McDonald, Inc. v. Twin City Fire Ins. Co.*, 607 S.W.2d 956 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Both cases are discussed later in this opinion. Courts outside of the state have ruled similarly. *See, e.g., Vari Builders, Inc. v. United States Fidelity and Guar. Co.*, 523 A.2d at 549; *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275 (Ind.1980) (citing *Eulich* ); *Weedo v. Stone–E–Brick, Inc.*, 405 A.2d at 788; *B.A. Green Constr. Co. v. Liberty Mut. Ins. Co.*, 213 Kan. 393, 517 P.2d 563 (1973).

■ With this discussion in mind, we now review Bateson's arguments contesting the summary judgment. Regarding exclusion (m), Bateson maintains that it is ambiguous in several respects and thus should be strictly construed against the insurer. Bateson first argues that the phrase "on behalf of the named insured" is ambiguous in that it could mean either work done by the employees, agents and servants of the insured or any work done pursuant to or in furtherance of the insured's contract. Bateson suggests that since both meanings are equally plausible, the exclusion should be given the more restrictive interpretation. Accordingly, "on behalf of the named insured" would not refer to independent contractors hired by Bateson and thus would not exclude Ream's actions from coverage.

This same argument was made in *Insurance Co. of North America v. Bosworth Constr. Co.*, where the appellant argued that "by or on behalf of" referred to the insured's employees and not to independent contractors hired by the insured. 469 F.2d 1266, 1269 (5th Cir.1972). The court did not agree, however, and determined that

the phrase should be given its ordinary meaning, thereby referring to independent contractors as well as employees. The court found that to adopt appellant's interpretation would result in a situation in which there would be coverage under the policy for the completed operations of independent contractors but not for those of the insured or his employees. *Id.* at 1270; *see also Indiana Ins. Co. v. DeZutti*, 408 N.E.2d at 1275 (improperly constructed footings caused cracking of mortar and bricks on house; in holding there was no coverage, court said footing was a component part of general contractor's product or *work done on his behalf*) (emphasis added). We agree with the *Bosworth* court, taking particular note of Lumbermens' point that in this case, Ream and the other subcontractors did not contract with the University of Texas but with Bateson and were working for Bateson in furtherance of the contract between Bateson and the University.

■ Bateson next argues the ambiguity of the term "work" in exclusion (m). Bateson first asserts the term should be interpreted to mean *labor* rather than *product*, which is the result of labor. Under this interpretation there can be no property damage to the labor itself but only to the product resulting therefrom. Bateson cites no authority for this argument, and we are not persuaded by it. *See Eulich v. Home Indem. Co.*, 503 S.W.2d at 848 ("Plaintiff concedes that according to dictionary definitions, 'work' as used twice in exclusion (k) may mean either the contractor's labor or the product of his labor, but insists that since the word is used twice in the same sentence, it must have the same meaning each time. He recognizes that 'property damage to labor arising out of the labor' would be an untenable interpretation in light of the contractual definition of 'property damage' as 'injury to or destruction of tangible property,'....").

■ Bateson's next point is that exclusion (m) is ambiguous as to whether the denial of coverage "to property damage to work" applies to portions of the insured's work other than that out of which the

property damage arose. (Bateson also includes exclusion (1) in this argument; however, we do not address (1) at present.) Bateson asserts that (m) is ambiguous as a matter of law due to the divergence of opinion among the courts that have dealt with the issue. Underscoring its ambiguity, according to Bateson, is the fact that there have been at least four different versions of exclusion (m).

However, our review of specifically Texas cases dealing with exclusion (m) leads us to conclude that exclusion (m) is not ambiguous and that it clearly denies coverage for damage to work of the insured that is not defective. We begin with *Employers Casualty Co. v. Brown–McKee, Inc.*, which concerned an insurance provision from which our exclusion (m) evolved. 430 S.W.2d 21 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). The *Brown–McKee* court distinguished between damage to other property, which is covered by a liability policy, and damage to the work completed by the named insured, which is not. In so doing, the court quoted the following from a Kansas case:

> Appellant contends that the exclusion provision excludes only the defective part which caused the injury but does not exclude other items handled or installed by it which were damaged by the defective item. This contention cannot be sustained. The exclusion provision definitely states that any goods or products handled or work completed by the insured are excluded. It is clear that the policy was intended to cover only damage to property or items which had not been handled by appellant. Goods or products handled by it, or work completed by it, were specifically excluded.

> .    .    .    .    .

> We find nothing ambiguous in the words or phrases used in the exclusion clause and this court should not search for ambiguities where the words used in the contract have a common and well understood meaning. *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 370 P.2d 396 (1962).

*Employers Casualty Co. v. Brown–McKee, Inc.*, 430 S.W.2d at 26–27.

The same provision/exclusion was at issue in *Industrial Indem. Co. v. Hennessee Homes, Inc.*, in which the insurance company sought to avoid liability for damage to a house resulting from a fire caused by a defective fireplace. 465 S.W.2d 955 (Tex. Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). In that case the court did find coverage but only because of an endorsement in the policy that provided coverage of risks otherwise not covered by reason of the exclusions. The court pointed out that such an endorsement was not before the court in *Brown–McKee*.

The following three cases address the version of exclusion (m) that is before us. In *Eulich v. Home Indem. Co.*, a building collapsed after completion because the contractor installed a steel member whose strength was less than that required by the contract. 503 S.W.2d at 847. The owner sued the insurer, and the court interpreted the policy as excluding coverage of the contractor's liability for damage to the building resulting from his failure to follow specifications, as distinguished from liability for damage to other property resulting from such a failure. *Id.* The distinction here, and this becomes confusing in some cases, is damage to other property resulting from faulty workmanship versus damage to work *of the insured* that is not defective.

In *Travelers Ins. Co. v. Volentine*, Volentine sought a declaratory judgment that the insurer was obligated to defend him in a suit involving a valve job that Volentine had performed on a car. 578 S.W.2d 501 (Tex.Civ.App.—Texarkana 1979, no writ). The suit alleged that by reason of defective performance of the work, a valve keeper failed to function, resulting in the destruction of the entire engine. *Id.* at 502–03. The court noted that nowhere did the petition allege that Volentine had performed work on any part of the engine except the valves. It therefore appeared that Volentine's work or work product was the repair of the valves only, and that other parts of the engine would constitute "other proper-

ty." As such, the court determined those other parts would be covered under the liability policy. *Id.* at 504. In its analysis, the court cited two cases in which engines were either rebuilt or overhauled. When one engine had to be rebuilt again and the overhaul on the other redone, the courts found no coverage because the insureds were simply repairing or replacing their own defective work. The *Volentine* court distinguished these cases because the repairmen had performed work on the entire engine, not merely on a component part. *Id.* Similarly, in the case before us, work was performed by Bateson, or on its behalf, on the entire library.

Finally, in *McCord, Condron & McDonald, Inc. v. Twin City Fire Ins. Co.*, while a subcontractor was setting a precast tee on the cafetorium of a junior high school building, something caused the tee and other tees and beams previously set by him to fall and damage walls of the building and door frames stored on the ground. 607 S.W.2d at 957. The court affirmed the denial of coverage, citing both *Eulich* and *Brown–McKee* in support of its decision. *Id.* at 958–59.

Two recent cases deal with what appears to be the current form of exclusion (m), which reads in part:

> This policy does not apply: ... to property damage ... to ... that particular part of any property not on premises owned by or rented to the insured, ... the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.

Those cases are *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380 (Tex.App.—Dallas 1987, no writ) and *Mid–United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824 (Tex.App.—Fort Worth 1988, writ denied). In *Dorchester*, the exclusion is designated Y(2)(d)(iii). The court states that this exclusion was discussed in *McCord*. We note that the exclusion in *McCord* was designated (m) and is identical to our exclusion (m).

*Dorchester* involved a suit for damages resulting from construction of an apart-

ment complex. The court noted there was no complaint in the petition that any other property was damaged as a result of the defective workmanship and determined that the policy exclusion prohibited coverage of the property damage at issue. The court then made the following statement:

> However, if defective work is performed by or on behalf of the insured, and such defective work causes damage to *other work* of the insured which was not defective, then there would be coverage for repair, replacement or restoration of the work which was *not* defective. Stated simply, there is no coverage for faulty workmanship. *See Eulich v. Home Indemnity Co.,* 503 S.W.2d 846 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.).

*Id.* at 382. *Mid–United* concerned the construction of an office building. The policy at issue contained an endorsement that the court decided did extend coverage to property damage resulting from the action of subcontractors. The *Mid–United* court distinguished *Dorchester* on the facts; however, the court also appeared to endorse the above-quoted language from that case. 754 S.W.2d at 828.

Obviously these two cases suggest a different interpretation of the exclusion. This may be due to the different wording of the more recent version or perhaps to a misinterpretation of *Eulich.* To our mind, the *Eulich* court clearly differentiated between damage to *other property* resulting from faulty workmanship and damage to *other work of the insured* that is not defective. Indeed *Eulich* is cited by courts in other jurisdictions which have consistently held that the language of this exclusion unambiguously excludes coverage for the cost of repairing or replacing non-defective as well as defective components of the insured's work. *Weedo v. Stone–E–Brick, Inc.,* 405 A.2d at 794; *Indiana Ins. Co. v. DeZutti,* 408 N.E.2d at 1280. We agree with this interpretation.

As previously stated, Bateson also argues that exclusion (m) is ambiguous as a matter of law because courts that have dealt with the issue have interpreted it differently. We have already demonstrated that many courts do not find exclusion (m) to be ambiguous. Furthermore, in responding to this argument, we find apropos the following statement:

> Additionally, this court wonders even in those cases where legitimate, differing interpretations of the same language result, at what point the language becomes ambiguous *as a matter of law.* Is that point reached when the jurisdictions are split evenly, when there is a 40%, 30% or 20% minority; or can a court no longer consider the issue for itself when only one other court reaches an opposite conclusion? This court prefers the alternative which allows each court to decide the issue in light of the policy terms and the facts before it.

*Stillwater Condominium Ass'n v. American Home Assurance Co.,* 508 F.Supp. 1075, 1080 (D.Mont.1981). In sum, we overrule Bateson's arguments concerning various phrases and terms in exclusion (m) and find that it does deny coverage in this case.

Bateson next argues that the policy is ambiguous with respect to coverage for breaches of warranty and failure to perform the work in a workmanlike manner, particularly in view of the general insuring clause, the limits of liability provisions and exclusion (a). Bateson quotes the insuring clause as providing that the insurer will pay "all sums the insured shall become legally obligated to pay because of property damage...." The limits of liability provision states that the insurer is liable for "(2) all property damage arising out of and occurring in the course of operations performed for the named insured by independent contractors and general supervision thereof by the named insured,...." Exclusion (a) was set out earlier in this opinion and states that it does not apply to "a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." Bateson argues that based on this policy language, a reasonable insured would assume that all property damages of any kind caused by the operations of the

independent contractors working for him would be covered. Bateson also asserts that exclusion (a) could have been more clearly worded to show that it was subject to other exclusions such as ($l$) and (m).

We first note that the quoted language of the insuring clause is followed by the qualifying phrase "to which this insurance applies." This phrase underscores the basic notion that the premium paid by the insured does not buy coverage for all property damage but only for that type of damage provided for in the policy. *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d at 790. The limitations on coverage are set forth in the exclusion clauses of the policy, and each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. *Id.* at 790, 795. More specifically, "[e]xclusion (a) does not extend or grant coverage.... The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy." *Haugan v. Home Indem. Co.*, 86 S.D. 406, 197 N.W.2d 18, 22 (1972). Other courts have not found (a) ambiguous in relation to other policy exclusions, and neither do we. Nor do we find that the three provisions cited by Bateson together create coverage for damages caused by independent contractors.

Bateson's next point is that the "independent contractor's coverage provisions" are ambiguous or missing and, when considered in connection with exclusions ($l$) and (m), should provide coverage in this case. Bateson argues that if coverage does not exist, then nothing is received in return for payment of the premium for such coverage. To reiterate, the purpose of this kind of insurance policy is to provide protection for personal injury or for property damage caused by the completed product but not for the replacement and repair of that product. As the trial court noted in its opinion, the independent contractor "hazard" that is insured by this policy is essentially the insured's potential liability for injuries to others arising out of the

independent contractor's work. To protect itself against an independent contractor's faulty workmanship, the general contractor has other insurance or indemnification options and, in the alternative, has a cause of action against the independent contractor.

Bateson then maintains that the trial court gave a broad construction to the exclusions in this case rather than a strict construction as required by Texas law. However, we find that the trial court construed the policy exclusions in a manner consistent both with Texas law and with the majority of the courts that have considered these issues.

Bateson next focuses on exclusion ($l$) and argues that ($l$) excludes only damage to that portion of the insured's product which was negligently manufactured and out of which the damage to other non-negligently manufactured portions arose. Therefore, the damaged but non-negligently manufactured portions of the product are not excluded from coverage by the policy. Given our determination that exclusion (m) denies coverage in this case, however, we will not review this argument. *See B.A. Green Constr. Co. v. Liberty Mut. Ins. Co.*, 517 P.2d at 567. In addition, we find no authority to support Bateson's contention that since both "operations" and "products" coverages exist here, defendant cannot prevail unless all three exclusions [ (k), ($l$) and (m) ] apply.

■ Bateson next asserts the trial court erred in failing to rule that Lumbermens' wrongful refusal to defend, in and of itself, rendered it liable for the full amount of its policy limits, plus supplemental payments and interest, regardless of whether Lumbermens had a duty to pay under facts later established or stipulated. Bateson apparently bases this argument on its contention that certain policy provisions are ambiguous. An insurer's duty to defend is determined by the allegations of the petition in the underlying cause *when considered in the light of the policy provisions* without reference to the truth or falsity of such allegations. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d

633, 635 (Tex.1973) (emphasis added). The allegations in the petition are not at issue here, and having found no ambiguity in the provisions of the policy, we find no duty to defend. Although its absence had no affect on our decision, for the benefit of the parties, we note that the University's Third Amended Original Petition does not appear to be in the record.

Bateson closes its appeal with a discussion of nine alleged errors that contributed to the "improper result" reached by the trial court in this case. Many of these points challenge statements, conclusions or references in the trial court's opinion; however, we are not cited to specific pages in that ninety-seven page document where these occur. Neither does Bateson cite authority, except in one instance, to support its brief arguments concerning each point. In lieu of analyzing each point individually, we find that error, if any, was harmless. TEX.R.APP.P. 81(b). The trial court researched this coverage issue at length and concluded that Lumbermens was entitled to summary judgment as a matter of law. Texas case law and that of other jurisdictions support this conclusion, and the alleged errors do not alter it. Therefore, we affirm the trial court's grant of Lumbermens' motion for summary judgment and the denial of Bateson's motion for summary judgment.