# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 5, 2011

Lyle W. Cayce
Clerk

No. 10-20499

AMERICAN HOME ASSURANCE COMPANY; NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,

Plaintiffs–Appellees

v.

CAT TECH L.L.C., as Successor-in-Interest to Cat Tech, Inc.

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:

In the course of servicing a hydrotreating reactor owned by Ergon Refining, Inc., Defendant-Appellant Cat Tech, L.L.C. damaged several of the reactor's components. Ergon and Cat Tech arbitrated the resulting dispute. The arbitrators found Cat Tech responsible for the damage to the reactor, and entered an award against it. Cat Tech sought indemnification from its insurers, Plaintiffs-Appellees American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The insurers denied the claim, contending, *inter alia*, that the "your work" exclusion found in both policies precluded coverage for damage to the reactor. The insurers filed a declaratory judgment action, and the district court found that the insurers had

No. 10-20499

no duty to indemnify Cat Tech. Cat Tech timely appealed. For the reasons stated herein, we reverse the judgment of the district court and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ergon Refining, Inc. ("Ergon") hired Defendant-Appellant Cat Tech L.L.C. ("Cat Tech") to service a D-651 hydrotreating reactor at its Vicksburg, Mississippi, refinery. In January 2005, Cat Tech replaced certain catalyst and "reactor internals" of the Ergon reactor.[1] After Cat Tech completed its work, Ergon initiated the reactor's start-up process. During that process, a high pressure drop in the lower section of the reactor occurred, forcing Ergon to shut down the reactor. When Ergon employees investigated the incident, they found significant damage to certain components, including the reactor internals. Following the shutdown, Cat Tech returned in February 2005. Cat Tech removed, repaired, and replaced the damaged internals, and loaded additional catalyst.[2] Following the completion of Cat Tech's work, a second large pressure drop occurred during the reactor's start-up process. The reactor, however, was not shut down to address this issue until October 2005, at which point Ergon hired a different contractor to perform the repair work. Additional damage to the reactor was discovered during the October 2005 shutdown and servicing.

Cat Tech and Ergon entered arbitration to determine liability. The arbitrators found that Cat Tech's improper placement of "rope packing" around

---

[1] The arbitration award describes the scope of Cat Tech's work in January 2005 as follows: "Cat Tech's scope of work . . . consisted of unloading all catalyst from Beds 1 through 4, removal of existing reactor internals, installation of new reactor internals, and the loading of new catalyst in each of the Beds."

[2] The arbitration award describes the scope of Cat Tech's work in February 2005 as follows: "Cat Tech unloaded catalyst from Beds 1, 2, 3 and part of Bed 4; Cat Tech screened the removed catalyst; Cat Tech removed the damaged reactor internals and reinstalled the repaired internals; and Cat Tech loaded the screened catalyst along with a limited amount of new catalyst to make up for attrition [of] the amounts lost in the screening process."

2

the "Bed 3 Johnson screens" had damaged the reactor internals in the January 2005 incident. The arbitrators also found that Cat Tech was responsible for the second pressure drop during the February 2005 incident, although they did not determine the precise cause of this malfunction. They awarded Ergon $1,973,180, which included direct damages for both events, prejudgment interest, attorneys' fees, and an offset for the unpaid contract price.

After entry of the arbitration award, Cat Tech sought indemnification under its two insurance policies: (1) a commercial general liability policy (the "CGL policy") issued by Plaintiff-Appellee American Home Assurance Company ("AHA") and (2) a commercial umbrella policy (the "umbrella policy") issued by Plaintiff-Appellee National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC") (collectively, the "policies" and the "insurers"). The umbrella policy provided coverage in excess of the CGL policy's limits. Although AHA had provided a defense to Cat Tech during the arbitration proceeding pursuant to a reservation of rights and paid its policy's per-occurrence limit of $1 million, AHA refused to pay any additional amount. NUFIC denied Cat Tech's claim in its entirety. The insurers' refusals were based in large part upon identical "your work" exclusions found in the CGL and umbrella policies (the "'your work' exclusion").

> The "your work" exclusion precludes coverage for:
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policies define "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection

No. 10-20499

with such work or operations." The phrase "products-completed operations hazard" is defined to include:

> [A]ll "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession; or
> (2) Work that has not yet been completed or abandoned.

Asserting, *inter alia*, that the "your work" exclusion precluded coverage, the insurers filed the instant action seeking a declaratory judgment to that effect. Cat Tech filed counterclaims, essentially seeking a declaratory judgment that one or both policies provided coverage. Following discovery, the insurers identified two experts who would testify at trial, including reactors expert Dr. Christopher Buehler, and filed the experts' written reports pursuant to Federal Rule of Civil Procedure 26(a).

Both Cat Tech and the insurers moved for summary judgment. The district court granted the insurers' motion and denied Cat Tech's, concluding that the "your work" exclusion precluded coverage for all of Cat Tech's claims. Cat Tech timely filed a notice of appeal.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a summary judgment motion, we draw all reasonable inferences in favor of the nonmoving party. *Turner*, 476 F.3d at 343; *see also Ford Motor Co.*

No. 10-20499

*v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) ("On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.").

**B. Summary Judgment**

*1. Insurance Contract Interpretation*

The parties agree that Texas law governs this case. As we have noted previously, "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). Where, as here, the disputed provision in the insurance policy is an exclusion, the insurer bears the burden of establishing that the exclusion applies. *Id*; *see also* Tex. Ins. Code § 554.002 ("[T]he insurer . . . has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded. Language of exclusion [sic] in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense.").

It is well settled that:

> [t]erms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage. Where an ambiguity involves an exclusionary provision of an insurance policy, [a court] must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.

*Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (internal citations and quotation marks omitted). An ambiguity is present if a "policy is susceptible to two or more reasonable interpretations." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006)

(citations omitted). An ambiguity does not exist, however, "simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Gilbert*, 327 S.W.3d at 133 (citations omitted). When an exclusion is clear and unambiguous, we interpret it according to its plain meaning, and give no deference to the insured's interpretation. *See Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)).[3]

*2. Interpretation of the "Your Work" Exclusion*

We understand that three categories of property damage are potentially at issue in this case. The first category encompasses property damage to the specific parts of Ergon's reactor upon which Cat Tech performed defective work. The second category embraces property damage to those parts of the reactor upon which Cat Tech performed non-defective work, but were nonetheless damaged in the January or February 2005 incident. The final category encompasses other Ergon property, upon which Cat Tech did not work, but was nevertheless damaged. We conclude that the "your work" exclusion precludes coverage for the first two categories of property damage, but not the third category. Stated differently, the "your work" exclusion only precludes coverage for damage to that portion of Ergon's property upon which Cat Tech performed repair services, defective or otherwise. It does not preclude coverage for any damage to Ergon's property that Cat Tech did not repair or service.

---

[3] Other courts have found "your work" exclusions similar to the one before us to be unambiguous, and, as will be seen *infra*, Cat Tech provides us with no reason to arrive at a different conclusion in this case. *See T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 696 (Tex. App. 1989—Houston [14th Dist.]) (stating that the "your work" exclusion is "not ambiguous"); *Eulich v. Home Indem. Co.*, 503 S.W.2d 846, 849 (Tex. App.—Dallas 1974) (declining to find a "your work" exclusion ambiguous). As such, we do not defer to Cat Tech's interpretation of the exclusion, and instead must interpret the exclusion according to its plain and ordinary meaning.

No. 10-20499

In *Wilshire Insurance Co. v. RJT Construction, L.L.C.*, 581 F.3d 222 (5th Cir. 2009), we interpreted a "your work" exclusion identical to the one before us in this case. There, the insured had been hired by a homeowner to perform repairs on the foundation of a house. The repair work was defective and caused cracks in the house's walls and ceilings. After the homeowner brought suit, the insured sought a defense from its insurer. The insurer sought a declaratory judgment as to the applicability of certain policy exclusions, including the "your work" exclusion. On appeal, we concluded that the "your work" exclusion "precludes coverage for the cost of repairing [the insured's] own work, the foundation." *Id.* at 226. We made clear, however, that the exclusion "*does not* exclude coverage for damage to other property resulting from the defective work." *Id.* (emphasis added). Thus, although damage to the foundation itself was excluded, the exclusion did not "preclude coverage for damage to the parts of the house resulting from the allegedly faulty foundation." *Id.* at 227.

Our decision in *Wilshire* was based in large part upon *Travelers Insurance Co. v. Volentine*, 578 S.W.2d 501 (Tex. Civ. App.—Texarkana 1979, no writ). There, the insurance policy at issue included a "your work" exclusion that precluded coverage for "[p]roperty damage to work performed by or on behalf of the Named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." *Id.* at 503. The insured had performed faulty repair work on the valves of an engine, which caused damage to the valves as well as the "destruction of the entire engine." *Id.* at 502-03. The court concluded that the "your work" exclusion "does not insure the policyholder against liability to repair or replace his own defective work or product, but it *does* provide coverage for the insured's liability for damages to other property resulting from the defective condition of the work, even though injury to the work product itself is excluded." *Id.* at 503-04 (emphasis added). As such, the exclusion precluded coverage for damage to the valves that the insured

7

had attempted to repair, but did not preclude coverage for damage to other parts of the engine. *Id.* at 504-05.

Texas courts have made clear, however, that the "your work" exclusion not only precludes coverage for property damage to an insured's defective work, but also excludes coverage for all damage to an insured's work, whether defective or non-defective. The Texas Court of Appeals decision in *T.C. Bateson Construction Co. v. Lumbermens Mutual Casualty Co.*, 784 S.W.2d 692 (Tex. App. 1989—Houston [14th Dist.]), is instructive. In *Bateson*, the insured contracted with the University of Texas to construct a library on campus. The library's exterior was to be sheathed in marble, and the construction documents specified a formula for the mortar used in anchoring the marble to the building. Shortly before completion, and continuing thereafter, cracks appeared in the marble. The damage was limited to the marble itself, the anchoring system, and some associated water damage, but no other University property was damaged. An investigation discovered that the damage to the marble was caused partially by mortar that did not conform to contract specifications. *Id.* at 693-94. Bateson refused the University's request to make repairs, and the University filed suit. Bateson sought a defense from Lumbermens, but the insurer denied coverage in part based upon the insurance policy's "your work" exclusion, which precluded coverage for "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." *Id.* at 694. On appeal, Bateson argued, *inter alia*, that the "your work" exclusion was ambiguous with respect to whether coverage was precluded for damage to the non-defective portions of the insured's work. The court firmly rejected this argument, concluding that the exclusion was "not ambiguous and . . . clearly *denies coverage* for damage to work of the insured *that is not defective.*" *Id.* at 696 (emphasis added). Thus, the "your work" exclusion precluded coverage for damage to other parts of the library that

the insured constructed, even though only a portion of the building was actually defective. *Id.* at 697-98.

Similarly, in *Eulich v. Home Indemnity Co.*, 503 S.W.2d 846 (Tex. Civ. App.—Dallas 1974), the court interpreted a "your work" exclusion applicable to "property damage to work performed by or on behalf of the named insured arising out of the work, or out of any materials, parts, or equipment furnished in connection therewith." *Id.* at 848. In that case, the insured had constructed a building that later collapsed due to the insured's use of a defective steel support beam. *Id.* at 847. The court concluded that the "your work" exclusion "clearly excludes liability for damage to the building resulting from the contractor's failure to perform according to specifications. It does not insure the contractor against his own failure to perform his contract, but does insure him against liability for damages *other than to the building itself* as to result of his performance, whether defective or otherwise." *Id.* at 849 (emphasis added). The court also noted that "[l]iability for damage to the building resulting from use of an inadequate steel member that did not comply with specifications is exactly the type of liability which the [exclusion] was evidently intended to exclude." *Id.*

*Bateson* and *Eulich* demonstrate that the "your work" exclusion precludes coverage for all damage to an insured's work, whether defective or not defective. In so holding, we recognize that certain other decisions may at first appear to be in conflict with this conclusion. *See Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 382 (Tex. App.–Dallas 1987), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. One Beacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008); *Mid-United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824 (Tex. App.–Fort Worth 1988). In both *Dorchester* and *Mid-United Contractors*, the court found that insurance coverage was precluded only for damage to the insured's defective work, not for damage to non-defective work. *Dorchester*, 737 S.W.2d at 382 ("[If] defective work is performed by or on behalf of the insured, and such defective

No. 10-20499

work causes damage to *other work* of the insured which was not defective, then there would be coverage for repair, replacement or restoration of the work which was *not* defective."); *Mid-United Contractors*, 754 S.W.2d at 827 (holding that exclusion precluded coverage only to "the particular part of the property with which the insured or its subcontractor had contact in causing the loss"). Both decisions are readily distinguishable from the present case, however, because they did not interpret or apply a "your work" exclusion. Rather, the insurance exclusion at issue in *Dorchester* and *Mid-United Contractors* provided that the policy did not apply "to property damage . . . to . . . *that particular part of any property* not on premises owned by or rented to the insured, . . . the restoration, repair or replacement of which has been made or is necessary by reasons of faulty workmanship thereon by or on behalf of the insured." 737 S.W.2d at 382 (emphasis added); *see also* 754 S.W.2d at 827. Unlike the exclusion in *Dorchester* and *Mid-United Contractors*, the "your work" exclusion does not confine itself to a "particular part" of certain property, or contain any other narrowing phrase that might limit its application only to defective workmanship.

In *Mid-Continent Casualty Co. v. JHP Development, Inc.*, 557 F.3d 207 (5th Cir. 2009), we acknowledged the importance of the distinction between the "your work" exclusion and the "particular part" exclusion. There, we interpreted an exclusion that (like those in *Dorchester* and *Mid-United Contractors*) excluded property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id.* at 211. We held that the exclusion "bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property." *Id.* at 215. In doing so, we recognized that certain cases, notably *Bateson*, "barred coverage

for the cost of repairing or replacing non-defective as well as defective components of the insured's work." *Id.* at 215. We explained, however, that:

> the exclusion at issue in *T.C. Bateson*–and in the other Texas cases that reach a similar result–was much broader in scope than the exclusion at issue in this case. The exclusion at issue in *T.C. Bateson* did not include any restrictive "that particular part" language, and instead broadly barred coverage for damage to the insured's work "arising out of the work or any portion thereof," which could reasonably be interpreted as excluding damage to any property worked on by an insured.

*Id.* at 215. Because a separate exclusion was at issue in *Dorchester*, *Mid-United Contractors*, and *Mid-Continent*, their holdings do not conflict with our interpretation of the "your work" exclusion in this case.

Finally, we address Cat Tech's argument before the district court and on appeal that the "your work" exclusion precludes coverage only for damage to its own intangible repairs (which constitutes its "work") and does not exclude damage to third-party property (such as Ergon's reactor) upon which it performed those services. This interpretation is entirely inconsistent with *Wilshire*, where we found that the "your work" exclusion applied to an insured's defective repair work on a house's foundation, 581 F.3d at 226-27, and *Volentine*, where the exclusion was applied to an insured's faulty repairs upon the valves of an engine. 578 S.W.2d at 503-04. Both cases clearly demonstrate that the "your work" exclusion applies when an insured has damaged third-party property by performing defective repairs or other services on that property. The district court did not err in rejecting Cat Tech's argument.

In light of our understanding of the "your work" exclusion, proper application of the exclusion depends upon the specific parts of the Ergon reactor that were damaged in the January and February 2005 incidents. For example, coverage would be entirely precluded if the damage was limited solely to those parts of the reactor that Cat Tech repaired or serviced (the first two categories

outlined above). On the other hand, coverage would not be precluded under the "your work" exclusion for any damage to reactor components upon which Cat Tech did not work (the third category). With this understanding, we now address whether the district court properly applied the exclusion in this case.[4]

### 3. The District Court Erred in Granting Summary Judgment

For summary judgment in favor of the insurers to be appropriate, the insurers must demonstrate the absence of any genuine dispute of material fact as to application of the "your work" exclusion. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) ("Summary judgment was proper only if *National Union* demonstrated that there was no genuine issue of material fact that [the impaired property exclusion applied]–which it failed to do in this case."); *see also Am. Int'l Specialty Lines Ins. Co.*, 620 F.3d at 562 ("Where . . . the disputed provision is an exclusion, the insurer bears the burden of establishing that the exclusion applies."). Appellees in this case were required to present sufficient evidence to demonstrate that the damage to Ergon's reactor was limited to those components that Cat Tech serviced. To support their burden on summary judgment, the insurers presented the following evidence: (1) the arbitration award, (2) the CGL policy, (3) the umbrella policy, and (4) Exhibit 13 of Ergon's submissions to the arbitration panel.

Upon consideration of the evidence presented, we conclude that the district court erred in granting summary judgment in favor of the Appellees. The arbitration award itself is far too vague in its description of the damage to the

---

[4] Cat Tech also argues that both policies provide additional coverage for "products-completed operations," and the district court erred when it found that the definition of "products-completed operations" did not create additional coverage. As the district court properly noted, however, this argument is foreclosed by *Valmont Energy Steel, Inc. v. Commercial Union Insurance Co.*, 359 F.3d 770 (5th Cir. 2004), where we held that the "products-completed operations" limitation did not function to grant coverage, but rather to "simply explain the amount of damages each policy will cover . . . ." *Id.* at 775-76.

reactor and how that damage relates to the work Cat Tech performed. For example, with respect to the January 2005 incident, the award states, "[d]uring the start-up process, a high pressure drop in the lower section of the reactor became manifest, and the reactor subsequently shut down. Upon entry of the reactor in February 2005, *among other things*, significant damage was discovered to the Bed 3 reactor internals." (R. 204 (emphasis added)). The arbitration award concludes that "Cat Tech failed to properly place the rope packing around the Bed 3 Johnson screens which, *among other things*, caused the damage to the Bed 3 reactor internals, migration of catalyst from Bed 3 into Bed 4, and damage to some of the catalyst." (R. 205 (emphasis added)). The award is even more vague with respect to the February 2005 incident, as it fails to particularly describe any of the resulting damage. While the award finds Cat Tech responsible for the damage, this only resolves the issue of liability between Ergon and Cat Tech, not coverage between Cat Tech and its insurers.

The "direct damages" section of the arbitration award is also inconclusive. While this section notes that "Ergon's direct damages are summarized at Tab 13 of Ergon's exhibits," this exhibit is highly technical and fails to adequately demonstrate the parts of the reactor that were damaged, or how those parts correspond to the components upon which Cat Tech worked.[5] The most glaring deficiency in the arbitration award relates to the reactor's "support beams." While the arbitration award makes a passing reference to damage to the "support beams," there is no evidence that Cat Tech performed any "work or operations" upon the support beams. Although AHA contends that the support beams are a component of the reactor internals and that Cat Tech "necessarily

---

[5] Tab 13 contains, for example, a long list of "catalyst" ordered, reference to "grading material," and numerous pages with almost entirely numerical data. Much of the information contained in that exhibit is quite complex and expert testimony would likely aid its interpretation.

worked on the support beams to the reactor internals," it is impossible to discern from the arbitration award whether the support beams are in fact part of the reactor internals or whether the support beams are separate components that were damaged by Cat Tech's work on the reactor internals.[6] A disputed material issue of fact exists, in our view, as to whether the damage to the reactor was limited to the parts upon which Cat Tech worked, or whether other parts of the reactor were also damaged in the January and February 2005 incidents.

In sum, the information contained in the arbitration award is insufficient to properly apply the "your work" exclusion. As such, we conclude that the district court erred when it relied on the award in granting the Appellees' summary judgment motion. On remand, the district court should conduct any additional fact-finding necessary to determine whether the damage suffered by Ergon's reactor was limited only to those components upon which Cat Tech worked, or instead included other components unrelated to Cat Tech's operations.[7]

Because we remand for further fact-finding, we do not reach Appellant's second argument regarding whether the district court erred in considering Dr. Christopher Buehler's expert report on summary judgment. We anticipate, however, that the district court may need to evaluate expert testimony from both

---

[6] We do not discount the possibility that AHA's position may ultimately be proven correct after further factual development. But our duty is to evaluate whether the adjudicated facts of the underlying proceedings determining liability–here, the arbitration award–are sufficient to determine the issues of coverage.

[7] In so holding, we recognize that "[t]he duty to indemnify is triggered by the actual facts establishing liability in the underlying suit," which in this case is the arbitration between Ergon and Cat Tech. *Trinity Univ. Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). Nevertheless, we have also recognized that "[t]he underlying case often does not resolve all the factual issues necessary to determine coverage because issues relevant to the question of coverage can be irrelevant to the question of the insured's liability," and thus "courts are not precluded from making factual findings in coverage actions." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 532 F.3d at 404. On remand, the district court may conduct whatever fact-finding it deems necessary to apply the "your work" exclusion.

No. 10-20499

sides to properly determine the applicability of the "your work" exclusion in this case.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court, and REMAND for further proceedings consistent with this opinion.