The HOUSING AUTHORITY OF the CITY OF DALLAS, TEXAS, a/k/a Dallas Housing Authority, Plaintiff,

v.

NORTHLAND INSURANCE COMPANY, Defendant.

No. Civ.A. 3:03–CV–385–L.

United States District Court, N.D. Texas, Dallas Division.

Aug. 23, 2004.

Id.

Daniel T. Mabery, Ernest Martin, Jr., Trevor B. Hall, Haynes & Boone, Dallas, TX, for Plaintiff.

Cara Doak Kennemer, John C. Tollefson, Goins, Underkofler, Crawford & Langdon, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Plaintiff's Motion for Summary Judgment, filed February 9, 2004. The court held a hearing on Plaintiff's Motion for Summary Judgment on August 19, 2004. After careful consideration of the motion, response, reply, summary judgment evidence, supplemental briefs, arguments of counsel, Defendant's letter brief dated August 20, 2004, record and applicable law, the court **grants** Plaintiff's Motion for Summary Judgment.

## I. *Factual and Procedural Background*

This is an insurance coverage dispute. Northland Insurance Company ("Defendant" or "Northland") issued a Nonprofit Organization Liability Policy ("policy"), policy number FG102255, to Plaintiff The Housing Authority of the City of Dallas, Texas, a/k/a Dallas Housing Authority ("Plaintiff" or "DHA") covering the time period relevant to this lawsuit.

The policy provides defense and indemnity coverage for, among other things, claims of wrongful employment practices. With respect to the defense and settlement of any covered claim, the policy provides that "[i]t shall be the right and duty of the Underwriter to defend Claims, however[,] the Insured shall be given the opportunity to confer with the Underwriter regarding the selection of counsel and defense of Claims." Pl.App. at 12 ¶ 4 (emphasis in original omitted).

On August 23, 2002, DHA was sued for alleged violations of law covered under the policy ("the underlying lawsuit" or "the *Bell* lawsuit").[1] DHA forwarded the underlying lawsuit to Northland for defense and indemnity coverage. Six days before the answer was due in the *Bell* lawsuit, DHA retained Katie Anderson ("Anderson"), an attorney at Strasburger & Price, L.L.P. ("Strasburger"), to defend its interests. Two days later, on September 13, 2002, Northland acknowledged DHA's claim and assigned Randy Nelson ("Nelson"), an attorney at Thompson, Coe, Cousins & Irons, L.L.P. ("Thompson Coe"), to represent DHA in the *Bell* lawsuit. On September 27, 2002, Northland agreed to defend DHA in the *Bell* lawsuit, subject to a reservation of rights.

In response, DHA requested that Anderson be allowed to continue to defend it, as it had not been satisfied with the slow progression of other lawsuits against it that were being handled by Thompson Coe. Northland denied DHA's request because Nelson had more experience and lower hourly rates than Anderson; Thompson Coe was handling other lawsuits against DHA which were covered by Northland policies; and Northland had a potential conflict of interest with Strasburger, as they represent Northland's parent company in coverage disputes. DHA then requested that it be represented by any law firm, other than Thompson Coe, that is approved by Northland. Northland responded by offering to allow a more senior attorney with Strasburger defend DHA in the *Bell* lawsuit if that attorney would agree to be paid at Nelson's hourly rate. DHA did not agree. In the end, Strasburger successfully defended DHA in the *Bell* lawsuit, and Northland has not paid any of the defense costs incurred by DHA.

DHA filed this action on October 4, 2002 in the County Court of Law Number 4 of Dallas County, Texas, alleging a breach of contract and a violation of Article 21.55 of the Texas Insurance Code and seeking attorney's fees and other monetary relief. Northland removed the case on the basis of diversity of citizenship to federal court on February 21, 2003. DHA now moves for summary judgment.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

1. The underlying lawsuit was styled *Louis Bell v. The Housing Authority for the City of Dallas,* civil action number 3–02–CV–1829–L, in the United States District Court for the Northern District of Texas, Dallas Division.

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Analysis*

### A. Breach of Contract

DHA contends that Northland breached the insurance contract because it was not given an "opportunity to confer" regarding the selection of defense counsel. DHA contends in the alternative that even if it was given an "opportunity to confer," it is entitled to its defense costs because Northland's tender of a defense subject to a reservation of rights letter triggered its rights to select its own counsel. Northland counters that DHA was given the opportunity to confer, and did confer, regarding the selection of defense counsel. Northland further contends that its reservation of rights did not trigger DHA's right to select its own counsel, and therefore, DHA is not entitled to its defense costs.

### 1. "Opportunity to Confer" Provision

■ At issue here is the following provision: "It shall be the right and duty of the Underwriter to defend Claims, however[,] the Insured shall be given the opportunity to confer with the Underwriter regarding the selection of counsel and defense of Claims." Pl.App. at 12 ¶ 4 (emphasis in original omitted). DHA first contends that the phrase "opportunity to confer" as found in the policy provision in question allows it "to have, at a minimum, meaningful input into the selection of counsel." Pl. Br. at 9. It, however, offers no case law or other authority supporting this interpretation. Whether DHA had a meaningful opportunity to confer depends on the meaning of the term "confer" and the facts developed by the summary judgment record. As the term "confer" is not defined in the policy, the court must give it its "plain, ordinary, and generally accepted meaning." *See Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir.1993) (applying Texas law). The generally accepted meaning of "confer," as found in Merriam–Webster's Collegiate Dictionary, is "to compare views or take counsel: CONSULT." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 241 (10TH ed.1997). Consult is defined by Merriam–Webster's Collegiate Dictionary as, *inter alia*, "to deliberate together: CONFER." *Id.* at 248.

The facts previously set forth reveal that the parties exchanged views on the selection of defense counsel. By way of example, the summary judgment evidence establishes that DHA's general counsel ex-pressed DHA's dissatisfaction with the defense counsel chosen by Northland[2] and its preference that the defense counsel it retained by allowed to continue her representation in the *Bell* lawsuit. The summary judgment evidence also establishes that Northland's representative acknowledged DHA's concerns, attempted to address the concerns,[3] and finally concluded that he had "not yet heard a reason why [the defense of the *Bell* lawsuit] should be moved to a new firm" and that "[u]nless there is another reason that has not yet been disclosed, this really needs to be the end of the matter." Pl.App. at 25. The summary judgment evidence further establishes that Northland eventually offered to allow a Strasburger attorney with Nelson's experience to defend the *Bell* lawsuit, although it would only agree to pay Nelson's hourly rate. Clearly, the parties discussed and deliberated the selection of counsel in the *Bell* lawsuit.

■ DHA next contends that because Northland selected Nelson as defense counsel before conferring with it, Northland violated the policy provision in question. DHA contends that allowing the insurer to choose defense counsel and then discuss its selection with its insured renders the "opportunity to confer" provision meaningless. The court disagrees. The provision in question does not contain a temporal restriction. In other words, the policy provision in question provides only that the insured be given an opportunity to confer regarding the selection of counsel. That the insured confers with the insurer regarding the selection of counsel after the selection has been made does not render

---

2. Specifically, DHA's general counsel told Northland's representative that while Thompson, Coe had provided adequate service in other cases, DHA was not pleased with the slow progression of these cases.

3. Pursuant to Northland's request, Nelson agreed "to take a more active role in all DHA cases [being handled by Thompson, Coe] and to investigate and resolve the source of DHA's dissatisfaction." Pl.App. at 25.

the insured's right meaningless. In this case, the summary judgment evidence establishes that a healthy discussion regarding the selection of counsel occurred after the selection was made. That Northland was not persuaded by DHA to change defense counsel, does not mean that DHA was not given the opportunity to confer regarding the selection of defense counsel. Even if it may be the common practice to confer before the selection is made, the language does not require that the parties confer in the sequence DHA prefers. The court therefore determines that Northland did not breach the "opportunity to confer" provision of the policy.[4]

## 2. Tender of Defense

 DHA further contends that Northland's tender of a defense subject to a reservation of rights letter triggered its right to select its own counsel. The purpose of a reservation of rights letter is to notify the insured of a potential or actual conflict of interest. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 n. 6 (5th Cir. 1983). An insurer properly reserves its rights when it has a good faith belief that the tendered claim may involve conduct for which the policy does not provide coverage. *Rhodes*, 719 F.2d at 120. "In such a situation, reservation of rights will not be a breach of the duty to defend, but notice of intent to reserve rights must be sufficient to inform the insured of the insurer's position and must be timely." *Id.* Here, there is no dispute that the reservation of rights sufficiently informed DHA of Northland's position and that it was timely. Instead, the issue is whether DHA had a right to select its own counsel after Northland reserved its rights. DHA contends that it did, and the court agrees.

Northland sent DHA a reservation of rights letter shortly after verbally acknowledging receipt of the claim. In that letter, Northland advises DHA that it is undertaking the defense of DHA in the *Bell* lawsuit but is reserving its rights to later disclaim coverage if it is determined that (1) DHA interfered with its right to defend by failing to provide it with all information, assistance and cooperation that it requests, or DHA otherwise prejudices its position; (2) the claim is based upon, arises from or is in consequence of any fraudulent act or omission or any willful violation of any statute or regulation; (3) the claim is based upon, arises from or is in consequence of any conduct that DHA knew was wrongful; or (4) the claim is for damages due in any part for actual or alleged bodily injury, sickness, disease, or mental or emotional distress. Northland also disclaimed coverage for punitive damages, contending that insurance coverage for such damages is against public policy in Texas. Finally, Northland reserved its right to modify its coverage position at any time upon receipt of additional information.

Regarding a reservation of rights defense, the Fifth Circuit has held that:

> When a reservation of rights is made, however, the insured may properly refuse the tender of defense and pursue his own defense. The insurer remains liable for attorneys' fees incurred by the insured and may not insist on conducting the defense.

*Rhodes*, 719 F.2d at 120; *see Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir.1991) ("The insured, confronted by notice of the potential conflict [through a reservation of rights], may then choose to defend the suit personally."); *see also American Eagle*

---

4. As the court has determined that DHA had an opportunity to confer, it need not address DHA's alternate argument that the phrase "opportunity to confer" is ambiguous.

*Ins. Co. v. Nettleton,* 932 S.W.2d 169, 174 (Tex.App.—El Paso 1996, writ denied) ("Upon receiving notice of the reservation of rights, the insured may properly refuse tender of defense and defend the suit personally."). In *State Farm Mut. Auto. Ins. Co. v. Traver,* 980 S.W.2d 625 (Tex.1998), the Texas Supreme Court held that, in general, an insurer may exercise its contractual right to control the defense as if it were the client "where no conflict of interest exists." 980 S.W.2d at 627.

Recently, the Texas Supreme Court elaborated on the types of conflicts that were contemplated in *Traver. Northern County Mut. Ins. Co. v. Davalos,* 140 S.W.3d 685, 688 (Tex.2004). Among other types of conflicts, which are not at issue in this case, the *Davalos* court explained that

> Ordinarily, the existence or scope of coverage is the basis for a disqualifying conflict. In the typical coverage dispute, an insurer will issue a reservation of rights letter, which creates a potential conflict of interest.... And when the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends, the conflict of interest will prevent the insurer from conducting the defense.

*Id.* (internal citations omitted). Here, Northland reserved its rights to disclaim coverage on, among other things, a willful violation of a statute. It is undisputed that the plaintiff in the *Bell* lawsuit alleged violations of Title VII and characterized DHA's conduct as willful. It is also undisputed that the facts to be decided in the *Bell* lawsuit are the same facts upon which coverage depends.

Northland contends that despite that the facts in the *Bell* lawsuit are the same as those upon which coverage depends, there is no evidence that the facts could have been "steered" to exclude coverage. In other words, Northland contends that DHA has offered no evidence that the counsel it selected would have manipulated the facts of the case, thereby allowing it to avoid coverage. As support, Northland primarily relies on *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.,* 964 F.2d 478 (5th Cir.1992). Its reliance on *Kitty Hawk,* however, is misplaced. In *Kitty Hawk,* the court determined the type of harm, namely, "clear and unmistakable" harm, that is necessary to establish that an insurer is estopped from raising coverage defenses or has waived coverage defenses when it assumes an insured's defense without issuing a reservation of rights letter or obtaining a nonwaiver agreement and with knowledge of the facts indicating non-coverage. *Id.* at 482–83. Such is not the case here. Northland issued a reservation of rights letter, thus estoppel or waiver is not at issue.

Northland next contends that regardless of whether its reservation of rights letter created a potential conflict of interest, DHA's only opposition at the time it tendered a defense was "the slow progress of DHA's cases that Thompson, Coe handled," see Pl.App. at 3, ¶ 10, which, it contends, is insufficient to create a disqualifying conflict of interest. It is true that the record establishes that the slow progress of its cases handled by Thompson, Coe was DHA's only concern, and that the conflict of interest matter seemingly just "fell into DHA's lap"; however, the facts are what they are and necessarily establish or create a disqualifying conflict of interest. Specifically, Northland issued a reservation of rights letter, which created a potential conflict of interest. "And when the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends, the conflict of interest *will* prevent the insurer from conducting the defense." *Davalos,* 140 S.W.3d at 688 (em-

phasis added). As previously stated, Northland acknowledged that the liability facts and coverage facts are the same, or at a minimum, did not dispute that the facts were the same, although it had the opportunity to do so. The court, therefore, determines that because the liability facts and coverage facts were the same and because a potential conflict of interest was created by the issuance of the reservation of rights letter, a disqualifying conflict existed; therefore Northland could not conduct the defense of the *Bell* lawsuit. Under these circumstances, DHA properly refused Northland's qualified tender of defense and defended the *Bell* lawsuit on its own. For the reasons stated herein, there is no genuine issue of material fact that Northland breached its duty to tender a defense. DHA therefore is entitled to summary judgment on this claim. Accordingly, Northland is responsible for the attorney's fees reasonably incurred by DHA in its defense of the *Bell* lawsuit.

**B. Article 21.55 of the Texas Insurance Code**

[6] Last, DHA contends that Northland's refusal to pay its defense costs constitutes a violation of Article 21.55 of the Texas Insurance Code. Section 6 of Article 21.55 provides as follows:

> In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.

Tex. Ins.Code. Ann. Art. 21.55 § 6. A "claim" is defined as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." *Id.* § 1(3). Article 21.55, however, does not define a "first party claim." Northland contends that a demand for a defense is not a first party claim and therefore is not cognizable under Article 21.55.[5] The court disagrees.

While the Texas Supreme Court has not specifically addressed this issue, it has, in dicta, indicated that Article 21.55 may be applicable to defense claims. *See State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996) (hypothesizing that when disputes regarding coverage and the duty to defend arise between an insured and an insurer, the insured may be entitled to recover a penalty against the insurer equal to eighteen percent of the claim pursuant to Article 21.55). Such a determination has been made by a Texas appellate court, *Northern County Mut. Ins. Co. v. Davalos*, 84 S.W.3d 314 (Tex. App.—Corpus Christi 2002), *rev'd on other*

---

**5.** The court noted at the hearing that Defendant's counsel took the opposite position in this case on the same issue in another case. Here he contends that a demand for defense is not a first party claim under Article 21.55; however, in *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F.Supp.2d 746 (N.D.Tex.2001), he contended that such a claim was a first party claim under Article 21.55. Defendant's counsel, Mr. John C. Tol-

lefson, explains his position in a letter brief to the court dated August 20, 2004. The court fully understands that counsel has a duty to zealously represent a client and made the statement only to add a little levity to the proceedings. The court, for the reasons herein stated, reaches the same result irrespective of counsel's two positions. **The clerk of the court is directed to file Mr. Tollefson's letter.**

*grounds,* 140 S.W.3d 685 (Tex.2004),[6] and several federal district courts: *Travelers Indem. Co. v. Presbyterian Healthcare Res.,* 313 F.Supp.2d 648 (N.D.Tex.2004); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.,* 267 F.Supp.2d 601 (E.D.Tex.2003); *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.,* 215 F.Supp.2d 783 (E.D.Tex.2002); *Rubalcava,* 148 F.Supp.2d 746.

Northland contends that the court should follow the recent holding of a Texas appellate court on this issue: *TIG Ins. Co. v. Dallas Basketball, Ltd.,* 129 S.W.3d 232 (Tex.App.—Dallas 2004, pet. filed). In *Dallas Basketball,* the court held that claims for defense are not first party claims and are therefore not subject to Article 21.55. *Dallas Basketball,* 129 S.W.3d at 242. The *Dallas Basketball* court acknowledged that its holding is contrary to the appellate court's opinion in *Davalos* and the holdings of several federal courts: *Luxury Living, Inc. v. Mid–Continent Cas. Co.,* 2003 WL 22116202 (S.D.Tex.2003); *Primrose Operating Co. v. National Am. Ins. Co.,* 2003 WL 21662829 (N.D.Tex.2003); *Westport,* 267 F.Supp.2d 601; *Mt. Hawley,* 215 F.Supp.2d 783; and *Rubalcava,* 148 F.Supp.2d 746. *Id.* at 240–41. It, however, dismissed these holdings as "unpersuasive" and "faulty." *Id.* The court disagrees. Even if this court were to accept the characterizations of the holdings of the federal cases as "unpersuasive" and "faulty," the appellate court's decision in *Davalos* and the dicta in *Gandy* indicate that a first party claim under Article 21.55 is applicable to defense claims.

This court therefore believes that, in light of the appellate court's opinion in *Davalos,* the dicta in *Gandy* and the holdings of several federal district courts, the Texas Supreme Court would likely decide that claims for defense are first party claims for purposes of Article 21.55. Accordingly, DHA's claim against Northland for failure to pay defense costs is a first party claim which is subject to the statutory penalties under Article 21.55.

## IV. *Conclusion*

For the reasons herein stated, there is no genuine issue of material fact regarding DHA's claims, and it is entitled to judgment as a matter of law. Accordingly, the court grants Plaintiff's Motion for Summary Judgment. With respect to the breach of contract claim, Northland is liable for the reasonable attorney's fees incurred by DHA in the defense of the *Bell* lawsuit. With respect to the Article 21.55, Northland is liable for the statutory penalties under Article 21.55 for failing to reimburse DHA for the defense costs it incurred in the *Bell* lawsuit. Additionally, Northland is liable for the reasonable attorney's fees incurred by DHA's counsel in this case. The court **directs** the parties to inform it, in writing, no later than **August 30, 2004,** whether they desire a jury trial on damages, that is, the amount of reasonable attorney's fees incurred by DHA in the defense of the *Bell* lawsuit, on the breach of contract claim; or whether they can decide this issue without court intervention. As for the attorney's fees incurred in this lawsuit, this issue will be

---

**6.** The Texas Supreme Court refused to determine the scope of Article 21.55, as it determined that regardless of whether the statute applies to a liability insurer, the insurer in *Davalos* did not violate the terms of the statute because it had properly tendered a defense. *Davalos,* 140 S.W.3d at 690–91. Although the Texas Supreme Court obviously had the opportunity to reverse the appellate court's ruling in this regard, it did not choose to do so.

decided by the court pursuant to Fed. R.Civ.P. 54(d)(2).

It is so ordered.