United States Court of Appeals
Fifth Circuit

**F I L E D**

October 3, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 04-51074
_____


LAMAR HOMES, INC.

Plaintiff-Counter-Defendant-Appellant,


VERSUS


MID CONTINENT CASUALTY COMPANY,

Defendant-Counter-Claimant-Appellee.


_____

Appeal from the United States District Court
For the Western District of Texas
_____


Before DAVIS, JONES and GARZA, Circuit Judges.

PER CURIAM:

This diversity case involves important and determinative questions of Texas law as to which there is no controlling Texas Supreme Court precedent. Accordingly, we certify those unresolved questions to the Supreme Court of Texas.

> CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO TEXAS CONSTITUTION ARTICLE 5, § 3-C AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE.

1

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I.

### STYLE OF THE CASE

The style of the case in which certification is made is <u>Lamar Homes, Inc. v. Mid-Continent Casualty Company</u>, Case No. 04-51074 in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Western District of Texas, Austin Division, <u>Lamar Homes, Inc. v. Mid-Continent Casualty Company</u>, 335 F.Supp.2d 754 (W.D. Tex. 2004). Federal jurisdiction is based on diversity of citizenship.

## II.

### STATEMENT OF THE CASE AND BACKGROUND

In April 1997, Vincent and Janice DiMare (the DiMares) entered into a contract to purchase a home constructed by Lamar Homes, Inc. (Lamar). In March 2003, the DiMares filed suit against Lamar and its subcontractor in Texas state court claiming that Lamar was negligent and failed to design and/or construct the foundation of the DiMares' residence in a good and workmanlike fashion in accordance with implied and express warranties.

Lamar timely forwarded the lawsuit to Mid-Continent Casualty Company (Mid-Continent) seeking defense and indemnification under a Commercial General Liability insurance policy (CGL policy) issued by Mid-Continent for a policy period of July 1, 2001 to July 1,

2

2002.  Mid-Continent refused to defend Lamar, and Lamar filed suit against Mid-Continent in Texas state court seeking a declaration that Mid-Continent's policy covered the claim asserted against Lamar in the DiMare litigation and that Mid-Continent owed Lamar a defense in that suit.  Lamar also argued that Mid-Continent's failure to tender a defense violated Texas Insurance Code Article 21.55, also known as the "Prompt Payment of Claims Statute."[1]  Mid-Continent removed the case to federal court.

Lamar and Mid-Continent filed cross-motions for summary judgment. At the motion hearing the parties agreed to limit the issue to whether Mid-Continent had a duty to defend Lamar in the DiMare litigation.  The district court held that (1) the underlying claim for damages from construction errors essentially presented either a claim based on a breach of contract or breach of warranty; and therefore (2) Mid-Continent did not have a duty to defend under its CGL policy because such construction errors are not covered by CGL policies as a matter of law.

The district court reasoned that because the gravamen of the underlying petition sought relief for a breach of contract resulting in pure economic loss, the insurer was not obligated to provide a defense under the CGL policy.[2]  The court stated that

---

[1]TEX. INS. CODE ANN. ART. 21.55 (Vernon 2000) (current version at TEX. INS. CODE ANN. § 542.051-542.061).

[2]The district court found that this result was mandated by the Texas Supreme Court's decision in Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617 (Tex. 1986).  In Jim Walter Homes, the court held that a homeowner could not recover

3

"[t]he purpose of comprehensive liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product."[3] The court stated further that "[I]f an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to 'enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work.'"[4] The court concluded that such a result would transform a liability policy into a performance bond. Thus, the court found that Mid-Continent was not obligated to provide a defense to Lamar in the underlying litigation.

## III.

## RELEVANT AUTHORITIES

### A.    "Occurrence" and "Property Damage" under the CGL policy

The CGL policy in question provides coverage for "bodily injury" or "property damage" caused by an "occurrence" that takes place within the "coverage territory."  The resolution of the first

---

punitive damages against a builder because the substance of the homeowner's claim was a breach of contract causing purely economic loss.  Id. at 618.  The district court was persuaded that, in Jim Walter Homes, "the Texas Supreme Court intended that the underlying petition be examined to determine if the cause of action sounds in contract or tort....[i]f contract, there is no occurrence or accident." District Court Opinion at 9.

[3]District Court Opinion at 7.

[4]Id. at 7-8.

4

issue presented to us on appeal involves the interpretation and application of the terms "occurrence" and "property damage." Under the policy, "'occurrence' means an accident, including a continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined under the policy as either (a) physical injury to tangible property, including all resulting loss of use of that property; or (b) loss of use of tangible property that is not physically injured.

The intermediate Texas courts of appeal are in conflict on the application of these clauses in a CGL policy when the insured contractor is sued by a building owner for damage arising from shoddy construction of the building.

Courts which have found that construction errors do not constitute an "occurrence" conclude that a claim for bad workmanship at bottom is a claim for breach of contract, which is not covered under the policy. These courts reason that shoddy work is foreseeable by the contractor and therefore is not an accidental or unexpected loss.[5]

Courts that have found an "occurrence" in this circumstance reason that where the shoddy workmanship is the result of the builder's negligence rather than intentional conduct, the loss is

_____

[5]The policy does not define the term "accident," but the Texas Supreme Court has held that an injury is accidental for purposes of coverage under a CGL policy if "[it is] not the natural and probable consequence of the action or occurrence which produced the injury...if the injury could not reasonably be anticipated by [the] insured, or would not ordinarily follow from the action or occurrence which caused the injury." Mid-Century Ins. Co. v. Lindsey, 997 S.W.2d 153, 155 (Tex. 1999).

5

unexpected and therefore accidental.

A number of the Texas intermediate courts of appeal decisions on this issue are collected in the margin.[6] Federal district courts in Texas are also split on this question.[7]

---

[6]Texas intermediate courts of appeal finding that damages resulting from construction errors do not constitute an "occurrence" under a CGL policy include Hartrick v. Great American Lloyds Ins. Co., 62 S.W.3d 270 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (builder's breach of implied warranty in preparing the soil and constructing a foundation was not an "accident" and therefore not an "occurrence" under the policy); Devoe v. Great American Ins., 50 S.W.3d 567 (Tex. App. Austin 2001, no pet.) (claims by homeowner of substandard construction resulted from intentional and voluntary acts of the insured, and therefore did not constitute and "accident" or "occurrence" under the policy).

Texas intermediate courts of appeal finding that damages resulting from construction errors do constitute an "occurrence" under a CGL policy include Lennar Corp. v. Great American Ins. Co., 2005 WL 1324833 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (construction errors causing water damage to homes constituted an "occurrence" under CGL policy); Gehan Homes, Ltd. v. Employers Mutual Cas. Co., 146 S.W.3d 833 (Tex. App.-Dallas 2004, pet. filed) (damages to home resulting from insured home builder's negligence are an "occurrence" under a CGL policy); CU Lloyd's of Texas v. Main Street Homes, Inc., 79 S.W.3d 687 (Tex. App.-Austin 2002, no pet.) (homeowner's claims of improperly designed foundation are an "occurrence" under the policy).

[7]Federal district courts finding that damages resulting from construction errors do not constitute an "occurrence" under a CGL policy include MidArc, Inc. v. Mid-Continent Cas. Co., 2004 WL 1125588 (W.D. Tex. 2004) (builder's failure to properly grade and landscape property causing flooding not an "occurrence"); Tealwood Construction, Inc. v. Scottsdale Ins. Co., 2003 WL 22790856 (N.D. Tex. 2003) (claims against contractor for damage to siding of home do not constitute an "occurrence" under CGL policy); Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co., 244 F.Supp.2d 706 (N.D. Tex. 2003) (construction errors causing damage to the subject of the contract arose from voluntary and intentional work by the insured, and therefore do not constitute an "accident" or "occurrence" under the policy); Malone v. Scottsdale Ins. Co., 147 F.Supp.2d 623 (S.D. Tex. 2001) (insured's faulty workmanship does not constitute an "accident" or "occurrence" under CGL policy); Acceptance Ins. Co. v. Newport Classic Homes, Inc., 2001 WL 1478791 (N.D. Tex. 2001) (damage to home from insured's failure to construct home in good and workmanlike manner and in compliance with building code does not constitute "occurrence" under policy).

Federal district courts finding that damages resulting from construction errors do constitute an "occurrence" under a CGL policy include Luxury Living, Inc. v. Mid-Continent Cas. Co., 2003 WL 22116202 (S.D. Tex. 2003) (construction errors causing water damage to home do constitute an "occurrence" under the policy); Great American Ins. Co. v. Calli Homes, Inc., 236 F.Supp.2d 693 (S.D. Tex. 2002) (damage to home from negligent construction constitutes an "occurrence" under CGL policy); First Texas Homes, Inc. v. Mid-Continent Cas. Co., 2001 WL 238112 (N.D. Tex. 2001) (foundation problems of home resulting from insured's failure to perform in good and workmanlike manner constitutes

The Texas intermediate courts of appeal also disagree on whether damage caused by defective workmanship constitutes "property damage" under a CGL policy. Courts finding no "property damage" in this circumstance reason that claims for the cost of repairing faulty workmanship are nothing more than claims for "pure economic loss," which are the damages that typically flow from a breach of contract. These courts, applying what has been termed the business risk doctrine, assert that a CGL policy does not insure against business risks; otherwise, there would be little difference between a CGL policy and a performance bond. These courts hold that because "pure economic loss" does not constitute damages from "physical injury to tangible property," no coverage is provided.

Other courts hold that when construction errors cause physical damage to the object of the contract, such damage constitutes property damage and is covered under the policy regardless of whether the only "tangible property" damaged was the residence itself.

A number of Texas intermediate courts of appeal decisions on this issue are collected in the margin.[8] Federal district courts

---

"occurrence" under CGL policy).

[8]Texas intermediate courts of appeal holding that damages resulting from construction errors do not constitute "property damage" under a CGL policy include Great American Lloyd's Ins. Co. v. Mittlestadt, 109 S.W.3d 784 (Tex. App.-Fort Worth 2003, no pet.) (damage to home from construction errors was economic loss that does not constitute "property damage" under a CGL policy).

Texas intermediate courts of appeal finding that damages resulting from

in Texas are also split on this question.[9]

Lamar contends that the line of cases holding that construction errors do not constitute an "occurrence" causing "property damage"

inappropriately rely on the "business risk doctrine," and ignore 1986 amendments to the standard CGL policy. Prior to 1986, the standard CGL policy contained a broad "Your Work" exclusion excluding coverage for any property damage to the subject of the contract caused by faulty workmanship. In 1986, the standard CGL policy was amended to except from these "Your Work" exclusions damage to the subject of the contract caused by the work of a subcontractor.[10] Lamar argues that given these amendments, it is

construction errors do constitute "property damage" under a CGL policy include Lennar Corp. v. Great American Ins. Co., 2005 WL 1324833 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (homeowners' water damages from construction errors constitute "property damage" under CGL policy); Gehan Homes, Ltd. v. Employers Mutual Cas. Co., 146 S.W.3d 833 (Tex. App.-Dallas 2004, pet. filed) (construction errors causing damage to home falls under "loss of use" provision in CGL definition of property damage).

[9]At least one federal district court in Texas concludes that damages resulting from construction errors do not constitute "property damage" under a CGL policy include Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co., 244 F.Supp.2d 706 (N.D. Tex. 2003) (damages to home from construction errors are economic losses from a breach of warranty, and therefore do not constitute "property damage" under CGL policy).

At least two federal district courts in Texas that conclude damages resulting from construction errors do constitute "property damage" under a CGL policy include Mid-Continent Cas. Co. v. JHP Development, Inc., 2005 WL 1123759 (W.D. Tex. 2005) (water damage to home caused by faulty workmanship constitutes "property damage" under CGL policy); Luxury Living, Inc. v. Mid-Continent Cas. Co., 2003 WL 22116202 (S.D. Tex. 2003) (rejecting argument that damage to home itself does not constitute "property damage" under CGL policy).

[10]The CGL policy at issue in this case contains a standard "Your Work" exclusion that provides:

**l.     Damage to Your Work**

8

inappropriate for courts to deny coverage based on the "business risk doctrine" when a general contractor requests a defense against claims arising from the work of a subcontractor. Lamar contends that many of the courts denying coverage under these circumstances either involved pre-1986 CGL policies, or the courts failed to account for these amendments to the CGL policy.

Mid-Continent contends that Lamar's argument regarding the evolution of the CGL policy and the misapplication of the "business risk doctrine" is an attempt to use policy exclusions to create coverage, which Mid-Continent argues has been rejected by Texas courts.[11]

The only Texas court that has addressed this issue concluded that construction errors caused by subcontractors were covered after the subcontractor exception to the "Your Work" exclusion was incorporated in the general contractor's CGL policy.[12] The Texas

---

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion **does not apply** if the damaged work or the work out of which the damage arises was performed **on your behalf by a subcontractor**. (Emphasis added).

[11]See State Farm Fire & Cas. Co. v. Volding, 426 S.W.2d 907, 909 (Tex. Civ. App.-Dallas 1968, writ ref'd n.r.e.) ("an exclusionary clause...can never be said to create coverage where none existed before.").

[12]See Lennar Corp. v. Great American Ins. Co., 2005 WL 1324833, * 11 (Tex. App.-Houston [14th Dist.] 2005) ("[w]e based [the] principle [that defective construction cannot constitute an 'occurrence'] solely on the 'business risk' exclusions, particularly the 'your work' exclusion ...we interpreted the 'your work' exclusion in the earlier version of the CGL policy, which did not contain a subcontractor exception.... Therefore, the principle we recited in [prior cases denying coverage for construction errors caused by subcontractors] has been modified.").

9

Supreme Court has not addressed this argument.

Given the frequency this issue is litigated and the copious amount of conflicting caselaw on both sides regarding whether construction errors causing damage to the subject of the contract constitute an "occurrence" causing "property damage" under a CGL policy, we believe that this is an issue that the Texas Supreme Court should consider resolving. Indeed the parties have called our attention to the Texas Supreme Court's call for briefs on whether it should grant writs on this issue.[13]

## B. Article 21.55 of the Texas Insurance Code and the Duty to Defend

This appeal also involves the issue of whether an insured may seek the remedies available under Article 21.55 of the Texas Insurance Code when an insurance company refuses to defend the insured against claims that trigger coverage under a CGL policy. Article 21.55 provides deadlines for the insurance company to decide whether to accept or reject claims from the insured.[14] An insurer that fails to comply with the statutory deadlines is liable

---

[13]See Gehan Homes, Ltd. v. Employers Mutual Casualty Co., 146 S.W.3d 833 (Tex. App. – Dallas 2004, pet. filed).

[14]TEX. INS. CODE ANN. ART. 21.55 § 2 (a) (current version at Tex. Ins. Code Ann. § 542.055 (a)) ("an insurer shall, not later than the 15th day after receipt of notice of a claim...(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at the time, will be required from the claimant."; TEX. INS. CODE ANN. ART. 21.55 § 3(a) (current version at TEX. INS. CODE ANN. § 542.056 (a)) ("an insurer shall notify a claimant in writing of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer, in order to secure final proof of loss.").

to pay the insured, in addition to the amount of the claim, 18 percent of the amount of the claim plus attorney's fees.[15]

The main issue here is whether an insured seeking legal defense from the insurance company under the policy asserts a "claim" under the statute. Article 21.55 defines a "claim" as a "***first party claim*** made by an insured or a policyholder under an insurance policy or contract...that must be ***paid*** by the insurer directly to the insured or beneficiary."[16] Courts concluding that the statute does not apply to requests for defense reason that such requests are third party claims and not first party claims, and that a request for defense is not a request for payment under the statute.[17] Courts finding that the statute does apply to requests for defense reason that such requests are first party claims because, as the named insured, the claimant seeking a defense is asserting a first party claim under the policy.[18] Because the

---

[15]TEX. INS. CODE ANN. ART. 21.55 § 6 (current version at TEX. INS. CODE ANN. § 542.60) ("In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy...in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees.").

[16]TEX. INS. CODE ANN. ART. 21.55 § 1 (3) (current version at TEX. INS. CODE ANN. § 542.056).

[17]TIG Ins. Co. v. Dallas Basketball, Ltd.,129 S.W.3d 232 (Tex. App. – Dallas 2004).

[18]Northern County Mutual Ins. Co. v. Davalos, 140 S.W.3d 685 (Tex. 2004). Two Federal District Courts in Texas have addressed this issue and agree with Davalos that requests for a defense under an insurance policy does constitute a "first party claim" under Article 21.55. See Rx.com, Inc. v. Hartford Fire Iins. Co., 364 F.Supp. 2d 609 (S.D. Tex. 2005); Housing Authority of City of Dallas v. Northland Ins. Co., 333 F.Supp. 2d 595 (N.D. Tex. 2004).

11

district court found that the underlying claims did not trigger a duty to defend in this case, the court did not reach this issue.

IV.

QUESTIONS CERTIFIED

Because the frequently litigated issues discussed above are matters of Texas law on which there are conflicting rulings by both the Texas intermediate courts of appeal and Federal district courts in Texas with no ruling from the Texas Supreme Court, we respectfully request that the Texas Supreme Court address and answer the questions we certify below.

1.

When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege an "accident" or "occurrence" sufficient to trigger the duty to defend or indemnify under a CGL policy?

2.

When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege "property damage" sufficient to trigger the duty to defend or indemnify under a CGL policy?

3.

If the answers to certified questions 1 and 2 are answered in the affirmative, does Article 21.55 of the Texas Insurance Code apply to a CGL insurer's breach of the duty to defend?

V.

CONCLUSION

12

We disclaim any intent that the Texas Supreme Court confine its reply to the precise form or scope of the legal questions we certify. The answer provided by the Texas Supreme Court will answer the issues on appeal in this case. We transfer to the Texas Supreme Court the record and appellate briefs in this case with our certification.

QUESTIONS CERTIFIED TO THE TEXAS SUPREME COURT.