Kerry **CHARLTON** d/b/a Kerry Charlton & Son, Plaintiff,

v.

**EVANSTON INSURANCE COMPANY,** Defendant.

No. SA–06–CA–480–H.

United States District Court, W.D. Texas, San Antonio Division.

June 29, 2007.

Lonnie E. Chunn, Chunn & Pilcher, San Antonio, TX, for Plaintiff.

Joseph A. Ziemianski, April Zubizarreta, Cozen O'Connor, Houston, TX, for Defendant.

### ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

HARRY LEE HUDSPETH, Senior District Judge.

Both Plaintiff Kerry Charlton d/b/a Kerry Charlton & Son ("Charlton") and Defendant Evanston Insurance Company ("Evanston") have filed motions for summary judgment. The Court has consid-

ered the motions, the opposing party's responses, and the applicable law, and finds that the motion of Charlton should be denied and the motion of Evanston granted.

## BACKGROUND

Plaintiff Charlton sued his own insurance company, Evanston, alleging that Evanston has a duty to defend him in a state court lawsuit under two liability insurance policies issued by Evanston to Charlton. Charlton also maintains that Evanston has a duty to indemnify him with respect to any liability that might be imposed on him should he lose. Evanston contends that it has no obligation to defend Charlton and will have no payment obligation.

The state court lawsuit arises from a construction contract between Charlton & Sons Contracting ("CSC") and Darren Casey ("Casey"), who is the plaintiff in a suit pending in the District Court of Bexar County, Texas, 288th Judicial District, as Cause No. 2004–CI–13500, styled *Darren Casey v. Charlton & Sons Contracting* (Motion, Exh. 1, Plaintiff's Third Amended Petition). Casey alleges that CSC contracted with him in 2003 and 2004 to provide construction services (remodeling, rebuilding, and adding onto the property) and materials to him at his San Antonio residence (*Id.* at 1–2). Casey further alleges that CSC "failed to properly and appropriately provide construction services, materials and management at the property in one or more of the following particulars:"

1. Failing to properly and appropriately install materials and finish work at the property in keeping with the property's overall scheme;

2. Failing to properly supervise and manage subcontractors working on behalf of [CSC] at the property with regard to this matter and with regard to work performed by those subcontractors at the property;

3. Failing to properly and appropriately supply appropriate materials which were suitable for the purposes for which they were intended in the construction of the property;

4. Failure to properly and appropriately construct new areas of the residence in keeping with the residence's overall scheme and in keeping with the established character of the property as represented by the Plaintiff and as known by Defendant;

5. Failing to properly and appropriately design and/or construct finish work in the property such that the property was constructed in keeping with the property's overall character; and

6. Failing to properly and appropriately manage the work of other subcontractors such that damage to other portions of the property did not occur as a result of improperly installed and/or applied to construction materials and/or regarding subcontractors' use of defective materials which, in turn, has caused damage to other property at the residence which now requires repair.

(*Id.* at 2–3). As a result of CSC's failure to properly and appropriately provide construction services, materials, and management, Casey alleges that he suffered the following damages: unworkmanlike and improper fashion of finish grade work; walls that were out of plumb; expensive molding improperly fitted against walls; stucco that was not applied properly or appropriately; sheetrock that was not applied properly or reasonably to the walls; improper installation of flashing which damaged "stucco walls" and other portions of the property; and water intrusion which damaged wood floors and wood doorways and allowed for the destruction of building

materials behind walls which caused damage to stucco (*Id.* at 4). Casey further alleges that his:

> [R]eal and personal property has continued to be damaged as a result of water intrusions at the property, which will continue to damage the interior building materials at the property as a result of the Defendant's negligence in failing to properly and appropriately place waterproofing at the residence.

(*Id.* at 9). Casey's petition alleges that CSC was negligent and breached the implied warranty that its work would be installed and provided in a good and workmanlike manner (*Id.* at 9–10).

At the time CSC provided the contracted-for services and materials, Charlton had insurance policies with Evanston and Western World Insurance Co. (Petition, ¶ 13). After Casey filed his lawsuit, both companies were put on notice of the suit and asked to defend and/or indemnify Charlton (*Id.* at ¶ 15). Evanston denied that Casey's claims were covered and that it had a duty to defend and/or indemnify Charlton in the Casey lawsuit (*Id.* at ¶ 17). Western World Insurance Co., however, began providing a legal defense for Charlton in the Casey lawsuit in October 2004, and in April 2006, tendered the remaining policy limits of $48,971.87 to Casey in partial satisfaction of his claims against CSC (*Id.* at ¶ 16, ¶ 20). Western World Insurance Co. then withdrew its defense of CSC in the Casey suit per the terms of the insurance policy (*Id.* at ¶ 20). Casey has alleged that he has remaining damages in excess of $700,000.00 and has indicated that he intends to move forward with a trial on the merits of his claims against CSC (*Id.* at ¶ 21).

Charlton had two liability insurance policies with Evanston in the relevant time period: policy numbers CL 420500600

(covering the July 23, 2003 through July 23, 2004 time period) and CL 420500982 (covering the July 23, 2004 through July 23, 2005 time period) ("the Policies"). Both Policies provided commercial general liability insurance coverage to Charlton. The insuring agreement of the Policies obligates Evanston to pay "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies" (Motion, Exh. 2, Apps. A & B, at p. 1 of Coverage Form). "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at p. 12 of Coverage Form). An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (*Id.* at p. 11 of Coverage Form). Further, the Policies impose on Evanston the "duty to defend the insured against any 'suit' seeking those damages," (*Id.* at p. 1 of Coverage Form), but the Policies go on to say that "[h]owever, we will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply" (*Id.*). According to the insuring agreement, the "insurance applies to . . . 'property damage' only if: (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The . . . 'property damage' occurs during the policy period" (*Id.*).[1]

---

1. The Policies also contain the following exclusion:

## TEXAS INSURANCE LAW

In this diversity case, Texas law applies. *See, e.g., Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.,* 351 F.3d 642, 646 (5th Cir.2003). Interpretation of a contract is a question of law. *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.,* 391 F.3d 639, 641 (5th Cir.2004); *Fisk Elec. Co. v. Constructors & Assocs.,* 888 S.W.2d 813, 815 (Tex.1994). Insurance policies are interpreted using the rules governing contract interpretation. *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.,* 359 F.3d 770, 773 (5th Cir.2004) (citing *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 740–41 (Tex.1998)). The goal in construing an insurance contract is to ascertain "the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). The policy should be considered as a whole, giving each part effect and meaning and rendering no provision superfluous. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.,* 99 F.3d 695, 700 (5th Cir.1996).

"If an insurance contract is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written." *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., Inc.,* 112 F.3d 184, 186 (5th Cir.1997). The court cannot look to parol evidence to determine the meaning of the insurance contract unless the court first determines that the insurance contract is ambiguous. *See Nat'l Union Fire Ins. Co.,* 907 S.W.2d at 520. "Language in insurance provisions is only ambiguous if the court is uncertain as to which of two or more meanings was intended." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.,* 249 F.3d 389, 392 (5th Cir.2001). "If the court finds an ambiguity in the contract provisions, particularly in an exclusion clause, the court should construe the policy strictly against the insurer." *Valmont Energy Steel, Inc.,* 359 F.3d at 774 (citations omitted).

"An insurer's duty to defend and its duty to indemnify are distinct and separate." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.,* 308 F.3d 451, 468 (5th Cir.2002) (citing *Farmers Tex. County Mut. Ins. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997); *E & L Chipping Co. v. Hanover Ins. Co.,* 962 S.W.2d 272, 274 (Tex.App.—Beaumont 1998, no pet.); *Argonaut S.W. Ins. Co. v. Maupin,* 500 S.W.2d 633, 636 (Tex.1973)). The duty to defend is broader than the duty to indemnify. *Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 382 F.3d 546, 552 (5th Cir.

---

2. Exclusions
This insurance does not apply to:

\* \* \*

j. Damage to Property
 "Property damage" to:

\* \* \*

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Motion, Exh. 2, Apps. A & B, at p. 3 of Coverage Form). "Your work" is defined as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

(*Id.* at p. 12 of Coverage Form).

Additionally, the Contractor Limitation Endorsement provides, in relevant part, as follows:

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of inadequate, improper, faulty or defective construction:

\* \* \*

4. Caused by the invasion or existence of water or moisture including but not limited to mold, mildew, rot and deterioration of the property.

(*Id.* at Contractor Limitation Endorsement).

2004) (citing *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir.2000)). "The duty to indemnify arises from the actual facts that are developed to establish liability in the underlying suit." *Quorum Health Res., L.L.C.*, 308 F.3d at 468 (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) (additional citations omitted)). An insured may have a duty to defend but, ultimately, no duty to indemnify. *Id.* (citing *Griffin*, 955 S.W.2d at 82).

▮▮▮▮ Under the Texas "eight corners" or "complaint allegation" rule, this court must compare the allegations in the most recent amended petition filed in the underlying suit against the insured with the provisions of the insurance policy to determine if the allegations "fit within the policy coverage." *Quorum Health Res., L.L.C.*, 308 F.3d at 468. "The duty to defend analysis is not influenced by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Id.* This court may look to extrinsic evidence only if the relevant pleading in the underlying case " 'does not contain sufficient facts to enable the court to determine if coverage exists.' " *Id.* (quoting *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir.1993)). In an insurance coverage dispute analyzed under the eight corners rule, the insured party—here, Charlton—

bears the initial burden of showing that there is coverage, while the insurer—Evanston—bears the burden of showing that any exclusion in the policy applies. If any allegation in the complaint is even potentially covered by the policy and not excluded, the insurer has the duty to defend. *Id.* Conversely, an insurer is not required to defend if the complaint only alleges facts excluded by the policy. *Id.*; *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir.1995).

## ANALYSIS

▮▮▮▮ Evanston cites cases from several federal and state courts in Texas[2] in support of his argument that—despite Casey's conclusory negligence allegations—Casey's injuries are contractual in nature and that breach of contract or warranty claims do not constitute an "occurrence." The Court agrees. Although the acts of a party may breach duties simultaneously in tort and contract, the nature of the injury determines which duty is breached. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). "When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone." *Id.* (citing *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 312 (Tex.1978); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977)). The

---

**2.** *See Mid Arc, Inc. v. Mid–Continent Cas. Co.*, No. A–03–CA–242–SS, 2004 WL 1125588, at *7 (W.D.Tex. Feb. 25, 2004) (allegations of failure to perform contractual and warranty obligations did not constitute an occurrence); *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 335 F.Supp.2d 754, 759–60 (W.D.Tex.2004) (same), *questions certified to the Texas Supreme Court on appeal*, 428 F.3d 193 (5th Cir.2005); *Vesta Fire Ins. Corp. v. Nutmeg Ins. Co.*, Cause No. A–00–CA–468–SS, 2003 WL 22508504, 2003 U.S. Dist. LEXIS 25324 (W.D.Tex. Sept. 29, 2003) (same); *Jim Johnson Homes, Inc. v. Mid–Continent Cas. Co.*, 244 F.Supp.2d 706, 716 (N.D.Tex.2003) (re-

jecting the argument that an insured's allegations of negligence for failure to properly perform a building contract could convert claims based on breach of warranties into a claim for recovery of property damage caused by an accident.); *Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.*, 188 S.W.3d 805, 812 (Tex. App.—Fort Worth 2006, pet. filed) (same); *Hartrick v. Great Am. Lloyds*, 62 S.W.3d 270, 277 (Tex.App.—Houston [1st Dist.] 2001, no pet.) (failing to comply with implied warranties could reasonably result in anticipated injury to the homeowners and would not, therefore, constitute an "occurrence").

Texas Supreme Court in *Nobility Homes* defines direct economic loss as encompassing:

> [D]amage based on insufficient product value; thus, direct economic loss may be "out of pocket"—the difference in value between what is given and received—or "loss of bargain"—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair.

557 S.W.2d at 78 n. 1 (citation omitted). The court goes on to cite with approval Texas appellate court language noting the distinction between commercial (or economic) loss and physical harm or damage to property. *Id.* at 80 (citing *Melody Home Mfg. Co. v. Morrison*, 455 S.W.2d 825, 826 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ)). Clearly, Texas law requires something other than economic loss to trigger coverage under a commercial general liability insurance policy.

■ "The purpose of comprehensive liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product." *Jim Johnson Homes, Inc. v. Mid–Continent Cas. Co.*, 244 F.Supp.2d 706, 714 (N.D.Tex.2003) (citing *T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 694–95 (Tex.App.—Houston [14th Dist.] 1989, writ denied)). "[I]f an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to 'enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work.'" *Id.* (quoting *T.C. Bateson*, 784 S.W.2d at 694–95). Thus, if the factual allegations read as a contractual breach for construction defects requiring repair or replacement instead of negligence resulting in property damage, the resulting damage for economic loss does not fall within the coverage of the insurance policy.

To be sure, several federal district courts in Texas have found coverage where "the underlying complaint contained broad allegations of negligence, i.e., that the insured failed to construct the home in 'a good and workmanlike manner.' "[3] These cases are unpersuasive, as they all involve an overly broad reading of the Fifth Circuit's opinion in *Federated Mutual Insurance Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720 (5th Cir.1999). In *Federated Mutual*, the Fifth Circuit compared two seemingly contradictory Texas Supreme Court cases and their progeny, finding that an occurrence, for coverage purposes, is not present where a tort is intentional, *see id.* at 724 (citing *Argonaut S.W. Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex.1973)), but may be where the negligent acts of the insured cause damage that is undesigned and unexpected. *See id.* at 725 (citing *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex.1967)).

Choosing to apply *Orkin* to the case before it, the *Federated Mutual* court stated that "courts have consistently held that damage wreaked on the work product of a third party—as opposed to that of the insured—is presumed to have been unexpected and, therefore, constitutes an acci-

---

3. *See Acceptance Ins. Co. v. Newport Classic Homes, Inc.*, No. Civ. A. 3:99–CV–2010BC, 2001 WL 1478791, at *3 (N.D.Tex. Nov. 19, 2001); *see also Luxury Living, Inc. v. Mid–Continent Cas. Co.*, No. Civ. A. H–02–3166, 2003 WL 22116202, at *15 (S.D.Tex. Sept. 10, 2003); *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F.Supp.2d 693, 699–700 (S.D.Tex. 2002); *First Tex. Homes, Inc. v. Mid–Continent Cas. Co.*, No. 3–00–CV–1048–BD, 2001 WL 238112, at *3 (N.D.Tex. Mar. 7, 2001).

dent or an occurrence." 197 F.3d at 725 (footnotes omitted). The court found coverage based on the underlying petition, which alleged that the insured:

> [B]y virtue of failing to install the correct select fill, ... negligently, damaged the work of [a third-party] paving contractor. Therefore, an "occurrence" is alleged within the four corners of the [underlying plaintiff's] complaint, and that triggers coverage.

*Id.* at 726. *Federated Mutual* does no more than recognize that an occurrence or accident may be present when an insured is negligent and is present when that negligence harms a third party, but is not present when the insured commits an intentional tort. *See id.* at 724–25.

 The Court finds it instructive that, in a case decided after *Maupin* and *Orkin*, the Texas Supreme Court stated that courts should examine the underlying petition to determine if the cause of action sounds in contract or tort. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex.1986). If contract, there is no occurrence or accident. Here, in spite of broad negligence allegations, the gravamen of Casey's petition is breach of contract and warranty: CSC did not provide Casey with construction services and materials in the fashion and up to the standard that was promised by CSC. An examination of the factual allegations in Casey's petition leads to the inevitable conclusion that Casey alleges loss for repair and replacement caused solely by CSC's failure to properly provide the contracted-for services and materials. In a nutshell, Casey's "injury was that the house [he was] promised and paid for was not the house [he] received." *Jim Walter Homes*, 711 S.W.2d at 618. The conclusory allegations of negligence contained in Casey's petition cannot serve to overcome the specific facts on which his claim is based. "Artful pleading suggesting that [the insured's] acts were negligent or reckless 'cannot overcome the basic facts underlying [the] claims.'" *Jim Johnson Homes*, 244 F.Supp.2d at 716–17 (quoting *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 372 (5th Cir.1998)). Therefore, applying the eight-corners rule, the Court concludes that Evanston does not owe a duty to defend and/or indemnify Charlton in the Casey lawsuit.[4]

It is therefore ORDERED that Evanston Insurance Company's motion for summary judgment be, and it is hereby, GRANTED.

It is further ORDERED that the Plaintiff's motion for summary judgment be, and it is hereby, DENIED.

It is further ORDERED that Plaintiff Kerry Charlton d/b/a Kerry Charlton & Son's claims against Defendant be, and

---

**4.** Even assuming *arguendo* that Casey's claims describe an "occurrence" under the Policies, the Court finds that coverage for certain claims by Casey would still be precluded. As to Casey's claims for damage to property that must be restored, repaired, or replaced because the work of Charlton or Charlton's subcontractors was improperly performed, the Court agrees with Evanston that there is no coverage because Exclusion j(6) precludes coverage for "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *See S.W. Tank & Treater Mfg. Co. v. Mid–Continent*

*Cas. Co.*, 243 F.Supp.2d 597, 603 (E.D.Tex. 2003) ("The rationale of excluding coverage for an insured's incorrect work is to protect the insurer from 'attempts to recover funds to correct deficiencies caused by the contractors' questionable performance.'"). Further, as to Casey's claims regarding water damage, the Court agrees with Evanston that there is no coverage because the Contractor Limitation Endorsement precludes coverage for "property damage" or any "loss or damage arising out of inadequate, improper, faulty or defective construction ... caused by the existence of water or moisture."

they are hereby, DISMISSED WITH PREJUDICE.

It is finally ORDERED that judgment be, and it is hereby, ENTERED in favor of Defendant Evanston Insurance Company.